# Richmond

FRANCIS ALLEN WINSTON V. COMMONWEALTH OF VIRGINIA.

October 11, 1948.

Record No. 3433.

Present, All the Justices.

*James W. Blanks* and *John Y. Hutcheson,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Ballard Baker, Special Assistant to the Attorney General,* for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

This writ of error brings under review a judgment entered upon the verdict of a jury convicting Francis Allen Winston, hereinafter called the defendant, of unlawfully driving or operating an automobile on a State highway while under the influence of intoxicating liquor, in violation of the Act of 1934, ch. 144, p. 220, as amended by the Act of 1940, ch. 87, p. 121 (Michie's Code of 1942, section 4722a). By its terms the violation of the statute is made a misdemeanor, punishable by a fine or imprisonment, or both, in the discretion of the court or jury.

It is conceded that the evidence adduced before the jury was sufficient to sustain a conviction, but the main con-

tention is that the defendant was not convicted by due process of law, in that the conduct of the officer who made the arrest, and that of the deputy sheriff or jailer into whose custody the defendant was delivered, were such as to deprive him of his constitutional right to call for evidence in his favor.

On Sunday afternoon, October 5, 1947, E. T. Keister, an officer in the Department of State Police, while patrolling a portion of Highway No. 360, in Charlotte county, had his attention attracted to the reckless operation of a passing automobile. He overtook the vehicle and found that it was being driven by the defendant, Winston, who was accompanied by a single passenger, Clifton Granger.

According to the testimony of Keister, the patrolman, both Winston and Granger were "very drunk." Two bottles of whiskey were found in the car, one unopened and the other partly filled. Both men were placed under arrest, were required to get into the rear seat of the patrolman's car, and were driven to Charlotte Court House, about twenty-two miles away, where they were delivered to the deputy sheriff or jailer and locked up at 4:30 p. m.

Both at the time of his arrest and during the trip to the jail the defendant, Winston, protested to the arresting officer that he was not intoxicated, that he had not taken any intoxicant of any kind during the whole day, and asked to be taken to a physician in order that he might be examined and his true condition determined. This request was ignored by Keister, because, as he said, "I did not consider that my business."

Upon his arrival at the jail the defendant renewed his request both to the arresting officer and the jailer that he be taken to a physician for an examination to substantiate his claim that he was not intoxicated and had not drunk any intoxicating liquor. Again these requests were ignored. The defendant then insisted that he be taken before a proper official in order that he might be admitted to bail, stating that he had a sufficient amount of cash in his possession as security for the necessary bond. This request, too, was

denied, as Keister, the arresting officer said, "because I considered him too drunk and told the jailer not to bail him until nine o'clock p. m." The jailer, too, concurred in this view, saying that the defendant "talked, acted and appeared to be drunk, and I considered him too drunk to be bailed."

Shortly after the arresting officer arrived at the jail with his two prisoners, Carlson Jones, an acquaintance of Winston, came up and joined in the request that the two men be granted the opportunity of applying for bail. This request was likewise denied, with the statement that the two men would be afforded the opportunity of applying for bail at nine o'clock p. m., in accordance with the directions of the arresting officer.

About nine o'clock p. m., Winston and his companion, Granger, were taken before the assistant trial justice at Charlotte Court House, where a warrant was issued for Winston, charging him with the offense of which he has been convicted. At the same time and by the same official he was admitted to bail.

According to the testimony of the deputy sheriff or jailer, the defendant, Winston, "appeared to be still drunk" at the time he was admitted to bail. The official who issued the warrant and admitted the defendant to bail did not testify on the subject.

Granger admitted that the whiskey found in the car was his property. He testified that he alone had consumed the liquor which had been taken from the partly-filled bottle, and corroborated the testimony of Winston that the latter had drunk no intoxicating liquor of any kind throughout the whole day, during which time they had been together. Granger further admitted that he was intoxicated at the time of the arrest and that he had been fined therefor by the trial justice.

Three residents in the neighborhood came upon the scene shortly after Winston and his companion had been placed under arrest. One of these testified that in his opinion Winston was "under the influence of liquor," while two

of these disinterested witnesses testified directly to the contrary.

Dr. Hoover, a qualified physician, called as a witness for the defense, testified that there are two scientific tests known to the medical profession by which it can be determined whether a person is under the influence of intoxicating liquor. One is by an analysis of the contents of the stomach, procured by the use of a stomach pump, and the other, "the most accepted method," is by an analysis of the blood. To be accurate both of these tests, he said, "should be performed immediately." Neither could be relied upon "more than three hours after" the time of the supposed consumption of the intoxicant.

Article I, section 8, of the Virginia Constitution provides, "That in criminal prosecutions a man hath a right * * * to call for evidence in his favor, * * *. He shall not be deprived of life or liberty, except by the law of the land or the judgment of his peers; * * *."

The defendant contends that the conduct of the arresting officer and that of the deputy sheriff or jailer deprived him of this constitutional guaranty in two respects:

First, it is said that the refusal of the officers to comply with the defendant's request to take him to a physician for an examination shortly after his arrest had the effect of depriving him of evidence which would have substantiated his claim that he was not intoxicated at the time he was driving the car.

We do not agree with this contention. It is true that the constitutional guaranty of the right of an accused "to call for evidence in his favor" "includes the right to prepare for trial which, in turn, includes the right to interview material witnesses and to ascertain the truth." *Bobo v. Commonwealth*, 187 Va. 774, 779, 48 S. E. (2d) 213, 215. But in the case before us, in respect to this particular claim, there was no denial of the right of the accused to produce evidence in his favor.

There is no evidence that the arresting officer or the jailer refused to allow the defendant, either personally or

through his friend who came to the jail shortly after the defendant had been delivered there, to get in touch with a physician and arrange for a physical examination of the defendant. Nor is there any contention that the services of a physician had been procured and that he was denied the opportunity of examining the defendant in jail. Had either of these situations obtained, a different question would have been presented to us.

In effect, the request of the accused here was that the arresting officer or jailer locate a physician who was willing to undertake the examination and take the defendant to him, or else have the physician come to the jail to make the examination.

The duties of an arresting officer and those of the custodian of one accused of a crime are fixed by law. We are aware of no statute or principle of law which places upon these officers in this State the duty to arrange for an examination of a person who has been arrested, or is being held in custody on a charge of drunkenness, and to produce him before such a physician for this purpose.

In this situation the duty of engaging the services of a physician to make such an examination, and of thus securing his testimony to establish the defendant's sobriety, was on the defendant and not on the officers.

It is next claimed that the defendant was deprived of his fundamental rights by the failure of the arresting officer to bring him promptly before a judicial officer authorized to issue criminal warrants, and by the failure and refusal of both the arresting officer and the jailer to afford the defendant the opportunity of applying for his release on bail. This presents the serious question in the case.

The case has been briefed and argued before us upon the theory that in arresting the defendant without a warrant, the officer was acting under the authority of Code, section 4827a (Acts 1942, ch. 324, p. 481), and that the defendant's rights were violated in that after his arrest he was not dealt with according to the mandate of that statute.

Code, section 4827a, provides that: "(a) Members of

the State police force of the Commonwealth, in uniform and displaying a badge of office, may, at the scene, upon reasonable grounds, based upon personal investigation, including statements of eyewitnesses, to believe that a crime has been committed by a person then and there present, apprehend such person without a warrant of arrest; * * *."

The authority of the arresting officer here does not necessarily rest upon this statute. By the Acts of 1932, ch. 342, pp. 617-18, as amended by Acts of 1934, ch. 192, pp. 277-78, and by the Acts of 1944, ch. 161, pp. 204-5 (Michie's Code of 1942, section 2154(53)), members of the State police force are "vested with the powers of a sheriff for the purpose of enforcing. all the criminal laws of this State."

Since the alleged offense of driving the car under the influence of intoxicating liquor was a misdemeanor, and was committed in the presence of the State police officer, he had the authority by virtue of his office to arrest the defendant without a warrant. *Muscoe* v. *Commonwealth*, 86 Va. 443, 447, 10 S. E. 534; *Hill* v. *Smith*, 107 Va. 848, 850, 59 S. E. 475; *Norfolk, etc., Ry. Co.* v. *Haun*, 167 Va. 157, 164, 187 S. E. 481, 484.

But regardless of whether the officer, in making the arrest, was acting pursuant to the authority of Code, section 4827a, or pursuant to his general authority to enforce the criminal laws of the State, it is perfectly plain that the rights of the defendant were violated and that he was not dealt with according to law.

Code, section 4827a, provides that, except in certain cases with which we are not concerned, "the officer making the arrest shall forthwith bring the person so arrested before an officer authorized to issue criminal warrants in the county or city where the arrest is made. The officer before whom such person is brought shall proceed to examine the officer making the arrest. If the officer before whom such person is brought has reasonable grounds upon which to believe that a criminal offense has been committed, and that the person arrested has committed such offense, he

shall issue such a warrant as might have been issued prior to the arrest of such person under the provisions of section forty-eight hundred and twenty-four of the Code of Virginia. If such a warrant is issued the case shall thereafter be disposed of in like manner as though the warrant had been issued prior to the arrest. If such a warrant be not issued the person so arrested shall be released."

■ While this statute requires the arresting officer to bring the prisoner "forthwith" before a judicial officer, this does not mean that he must forsake all other duties and do so immediately upon making the arrest. But this mandate of the statute must be performed with such reasonable promptness and dispatch as the circumstances may permit.

Similar statutes requiring that arrested persons be taken promptly before a committing authority have been adopted by Congress and the legislatures of nearly all of the States.[1] While these statutes in terms require the officer to perform this duty "forthwith," "immediately," or "without delay," the courts have uniformly held that this means that he must do so with reasonable promptness and without unnecessary delay. See *McNabb* v. *United States*, 318 U. S. 332, 342, 63 S. Ct. 608, 614, 87 L. Ed. 819; 6 C. J. S., Arrest, section 17-b, p. 618; 4 Am. Jur., Arrest, section 70, pp. 49, 50.

As we said, speaking of a similar mandate, in *Sands & Co.* v. *Norvell*, 126 Va. 384, 400, 101 S. E. 569, "There must, of course, be a reasonable time allowed for making such return, and some latitude must be given the officers in keeping a prisoner in custody after he has been arrested and before he is taken to the justice, * * * ."

■ It is quite apparent that the arresting officer here did not comply with the mandate of the statute and produce the defendant "forthwith" or with reasonable promptness before the specified judicial officer.

But even if the circumstances of the arrest were not within the purview of this particular statute, it was the duty of the arresting officer to have taken the defendant

---

[1] For a compilation of such statutes, see *McNabb* v. *United States*, 318 U. S. 332, 342, 63 S. Ct. 608, 614, 87 L. Ed. 819

within a reasonable time, or without unnecessary delay, before a judicial officer in order that the latter might inquire into the matter and determine whether a warrant should be issued for the detention of the defendant, or whether he should be released. See *Hill* v. *Smith, supra* (107 Va., at pages 850, 851); 4 Am. Jur., Arrest, section 70, pp. 49, 50; 6 C. J. S., Arrest, section 17-b, pp. 618, 619.

Thus, under either aspect of the case, the rights of the defendant were violated. Despite the defendant's protestations of innocence, the arresting officer delivered him to the jailer at 4:30 p. m., with the injunction that he be held there until nine o'clock p. m., at which later time he was to be brought before the judicial officer. These directions, as we have seen, the jailer carried out to the letter. Thus, instead of performing his duty, the arresting officer usurped the functions of a judicial officer, and, because he considered the defendant too drunk to be released, in effect committed him to jail for nearly five hours. That such detention was illegal is too plain for argument.

Moreover, had the defendant been taken before a proper judicial officer for the purpose of securing a warrant for his arrest, the defendant could have then and there applied to such officer for bail. It would have been the duty of such judicial officer to determine whether the defendant was in a proper condition to be admitted to bail.

But the actions of the arresting officer and the jailer in denying the defendant this opportunity by confining him in jail because they concluded that he was not in such condition to be admitted to bail, had the effect of substituting their discretion in the matter for that of the judicial officer. Under the circumstances here, the defendant was clearly entitled to the benefit of a judicial opinion and judgment upon the question of his eligibility for bail. This right was arbitrarily denied him.

It is perfectly apparent, too, from what has been said, that as a result of his illegal detention the defendant has been forever deprived of material evidence which might have supported his claim that he was innocent of the

charge under which he was held. According to the un-disputed medical testimony, after the lapse of the time during which he was held in jail, a physical examination would have been useless and ineffectual.

It is argued that the record does not show that the con-duct of the arresting officer and jailer resulted in prejudice to the defendant, because, it is said, there is no evidence that a physical examination of the defendant would have substantiated his claim of sobriety, or that he could have produced lay witnesses to testify to that effect.

Assuming, but not deciding, that a showing of prejudice was necessary,[2] we are of opinion that this sufficiently ap-pears from the record.

The fact that there was a conflict in the evidence as to whether the defendant was intoxicated at the time he was operating the car on the highway, that both he and his companion, Granger, testified that the defendant had par-taken of no intoxicating liquor whatever during the day, and that the defendant was willing and repeatedly offered to submit to a physical examination in substantiation of his claim, tends to show that evidence of his sobriety, which he desired to produce, was in fact procurable and would have been procured had he been dealt with according to law.

It is true, as the Attorney General says, that the mere fact that an arresting officer fails to perform the statutory duty to bring the arrested person promptly be-fore a judicial officer, to be dealt with according to law, or that the opportunity for applying for bail was im-properly denied him, does not necessarily invalidate his subsequent conviction. But where, as here, the effect of the failure of the arresting officer and of the custodian of the arrested person to perform their respective duties is such as to deprive a person of the constitutional right to call for evidence in his favor, his subsequent conviction lacks the required due process of law and cannot stand.

[2] Compare *Bobo* v. *Commonwealth*, 187 Va. 774, 779, 48 S. E. (2d) 213, 215.

Since the opportunity denied the defendant of producing such evidence cannot be remedied at a new trial, we are of opinion that the judgment should be reversed and the prosecution dismissed. It is so ordered.

*Reversed and dismissed.*