# Richmond

JAMES CECIL McHONE v. COMMONWEALTH OF VIRGINIA.

January 16, 1950.

Record No. 3623.

Present, All the Justices.

The opinion states the case.

*Frank P. Burton* and *A. M. Harman, Jr.*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General*, and *Henry T. Wickham, Assistant Attorney General*, for the Commonwealth.

Buchanan, J., delivered the opinion of the court.

The defendant, McHone, was convicted of driving while under the influence of intoxicants, sentenced to pay a fine and given a suspended jail sentence. He claims that the judgment should be reversed and that he should be freed of the charge because he was illegally held in jail after his arrest.

By agreement he was tried by the court without a jury. The evidence for the Commonwealth, now to be taken as true, established that in the afternoon of November 9, 1948, Sergeant Akers of the State police met the defendant driving a truck in a manner to excite his suspicion. Akers turned around and followed the defendant for about a mile, and saw the truck twice run off the road onto the shoulder and then back to its left side. Akers stopped the defendant and found that he was drunk. When he got out of the truck he was staggering, the odor of alcohol was extremely strong on his breath, his tongue was thick and the pupils of his eyes were dilated. He at first denied he had been drinking, but later said he had been drinking since that morning. In the truck were an empty pint bottle and another pint bottle with about half an inch of illegal whiskey in it, which the defendant told the officer he had bought on his way from the town of Stuart, but declined to say from whom.

Akers arrested him, told him he was charged with driving his truck while under the influence of whiskey and proceeded with him in the officer's car to the town of Pulaski. On the way he told Akers he realized he was guilty and insisted on paying his fine to him. They arrived at the jail in Pulaski at about 4:00 p. m., where defendant was turned over to the jailer. Trooper Shelton of the State police came to the jail ten or fifteen minutes later and the defendant repeated to the three officers, as they sat in the jail office, that he realized he was guilty, but did not want to go to jail, and insisted that they permit him to take a cab and go home.

Akers testified that his recollection was that after they arrived at the jail he called the town police department for

a justice of the peace and was advised that Mr. Blankenship was still asleep. Blankenship was desk sergeant of the town and a justice, who usually came to his office around five o'clock in the afternoon and was on duty through the night for the purpose of issuing warrants, taking bonds or committing to jail. Akers then told the jailer to bond the defendant when the justice came down and that he had enough money to post his own bond. The jailer testified that his recollection was that Akers called the police department and "I think we contacted two or three parties."

There was a telephone in the jail office to which the defendant had access and the jailer testified they gave him opportunity to do anything he cared to do. Between five and six o'clock the jailer, at the request of the defendant, telephoned Mr. Powell, the owner of the truck, at Stuart, near defendant's home, to advise him that defendant was in jail, but on account of weather conditions Powell did not come over that night.

The jailer testified that when Akers left defendant in his custody Akers told the jailer the defendant "would be available for bail at a reasonable time," but the jailer further testified that "the general instructions, if they are put in, are that they stay there around four hours, * * * until they feel they are capable of taking care of themselves." Accordingly, when the defendant later on told the jailer he wanted to give bond he was informed that he could do so at the usual time, around four hours. The defendant had about $200 with him and at eight o'clock that evening he gave a cash bond before Blankenship and was released. The warrant on which the defendant was later tried was not issued until November 11—two days after the arrest.

On his trial the defendant introduced one witness who testified that he talked to defendant around one o'clock and noticed nothing wrong with him and that he appeared normal; and another witness, who testified that he spoke to him at about two o'clock from his car while defendant was sitting in his truck about twenty feet away, and noticed

nothing unusual about his appearance. The defendant himself testified that when Akers arrested him and told him he smelled liquor on him, "I gave him no argument whatsoever," but got into his car and went with him. He said that on the way he asked the officer if it was possible to get a bondsman, that he was in a strange territory; that after he got to the jail he insisted on giving bond and showed them he had sufficient money. Asked why he wanted to give bond, he replied, "Well, if I could have gotten out, I could have gotten a doctor or somebody that could have been some benefit in helping me;" that he at that time protested his innocence; that he was informed when inside the jail that he could not get out in less than four hours; that he got the jailer to make the telephone call to Mr. Powell, "and they didn't let him talk to me;" that at the end of the four hours he was taken before the justice, where he gave bond and was released; that Officer Akers then told him he could drive his truck away if he wanted to, but he replied he was sick and he was going to get a taxicab and go home, which he did.

He further testified that the day before his arrest a doctor in North Carolina had removed a small tumor from his upper thigh by electric needle and had given him some opiate pills to relieve the pain, which made him sick and dizzy; that next morning he felt strange so he took a small drink of whiskey before breakfast and also took two of the pills; that at the time of his arrest he was drowsy and groggy from the effect of the medicine; he denied ownership of the whiskey in the truck, stating that he was driving Powell's truck; he denied saying he was drunk or admitting his guilt. He said the jailer at no time refused to make any call for him and while he would not "specifically say" that the officers kept him from giving bond, he was afforded no opportunity to do so. The defendant asserts that upon this record he was illegally held in jail; that as a consequence he was denied his constitutional right "to call for evidence in his favor," Va. Const., art. 1, sec. 8, and that under our

holding in *Winston* v. *Commonwealth*, 188 Va. 386, 49 S. E. (2d) 611, he is entitled to be released from further prosecution.

His contention that he was illegally held in jail is well founded. The State police sergeant had a right to make the arrest, both under section 4827a, Code, 1942 (Michie), and by virtue of his office. *Winston* v. *Commonwealth, supra.* But whether he proceeded under the one authority or the other, it was his duty under the law to take the defendant before an officer authorized to issue criminal warrants, so that the officer might determine whether the defendant should be released, admitted to bail or committed to jail. Code, 1942 (Michie), secs. 4826, 4827a, 4828; *Winston* v. *Commonwealth, supra.*

This mandate of the law must be performed with reasonable promptness and without unnecessary delay; but a reasonable time and some latitude must be allowed to arresting officers in keeping a prisoner in custody before taking him to a judicial officer. *Winston* v. *Commonwealth, supra; Sands & Co.* v. *Norvell*, 126 Va. 384, 101 S. E. 569.

What is reasonable promptness is necessarily a question of fact, depending on the circumstances of each case; *e. g.*, the availability of a judicial officer, other essential duties of the arresting officer, the physical or mental condition of the prisoner, and so on. Ordinarily this is a jury question unless the facts are undisputed. *Mullins* v. *Sanders*, 189 Va. 624, 54 S. E. (2d) 116; 35 C. J. S., False Imprisonment, sec. 31, pp. 546-7; 22 Am. Jur., False Imprisonment, sec. 85, pp. 412-3; *Harbison* v. *Chicago, etc., Ry. Co.*, 327 Mo. 440, 37 S. W. (2d) 609, 79 A. L. R. 1, and anno. at p. 17.

Drunkenness of a prisoner may afford sufficient ground for delay in taking him before a judicial officer, certainly if it exists to the point that no orderly examination could then be held, or the prisoner could not intelligently understand what was going on. *Arneson* v. *Thorstad*, 72 Iowa 145, 33 N. W. 607; *Fouraker* v. *Kidd Springs Boating, etc., Club* (Tex. Civ. App.), 65 S. W. (2d) 796; *State* v.

*Freeman*, 86 N. C. 683; *Wiltse* v. *Holt*, 95 Ind. 469; *Hutchinson* v. *Sangster*, 4 G. Greene (Iowa) 340.

■ The evidence in this case fails to establish that the delay in taking this defendant before a judicial officer was a reasonable delay. To the contrary, it shows that he was held for four hours pursuant to some arbitrary general instruction to the jailer, the source of which the record does not disclose, and which was wholly unauthorized by law, and without relation to whether the defendant was sober enough for a hearing before the end of that period, and with the fact established by the evidence that a judicial officer could readily have been sooner procured.

■ But, as we said in the *Winston Case, supra,* the mere fact that an arresting officer fails to perform his duty of bringing an arrested person before a judicial officer, or that an opportunity for applying for bail was improperly denied him, "does not necessarily invalidate his subsequent conviction." 188 Va. at p. 396, 49 S. E. (2d) at p. 616.

We held that under the circumstances shown in the *Winston Case, supra,* the effect of the failure of the arresting officer and of the custodian of the arrested person to perform their duty was to deprive that defendant of his constitutional right to call for evidence in his favor; that his subsequent conviction therefore lacked the required due process of law, which could not be remedied at a new trial, and the prosecution was accordingly dismissed. The facts in the case in judgment are materially different from those in the *Winston Case* and do not warrant the action there taken.

In the *Winston Case* the defendant, both at the time of his arrest and on the trip to jail, protested to the arresting officer that he was not intoxicated and that he had not taken any intoxicant of any kind during the whole day. He insisted at those times and after his arrival at the jail that he be taken to a physician for examination in order that it might be medically determined that he had not been drinking. The defendant's claim of being sober was there corroborated by his companion in the car, who had been with

him all day and who testified that at no time that day had the defendant had a drink. He was further corroborated by two disinterested witnesses who were present almost immediately after the arrest. Soon after his arrival at the jail, a friend of the defendant's came to the jail and requested that he be allowed to post bond for the defendant. All requests for bail were denied and in accordance with the order of the arresting officer the defendant was held by the jailer from 4:30 p. m. until 9:00 p. m. before he was taken before a judicial officer and admitted to bail. There was medical testimony that there were tests to determine whether a person was under the influence of intoxicants, but to be accurate the making of them could not be delayed more than three hours after the drinking. We said that the evidence in that case "tends to show that evidence of his sobriety, which he desired to produce, was in fact procurable and would have been procured had he been dealt with according to law." 188 Va. at p. 396, 49 S. E. (2d) at p. 616.

The evidence in this case not only does not tend to prove such facts, but convincingly demonstrates the contrary to be true. The officers for the Commonwealth testified emphatically that from first to last, at the time of his arrest, on the way to jail, and in the jail, the defendant freely admitted his guilt. His request and desire were that he be allowed to pay his fine to the officers, take a cab and go home. As Akers expressed it, the defendant "knew he was guilty, and he had no intention of doing anything except to pay off and go home." He did not ask either of the police officers to be allowed to give bond and the only time it was mentioned by him, according to the Commonwealth's evidence, was to the jailer, some time after the police officers had gone; but not even then did he deny his guilt or say anything about procuring evidence. It is hardly likely that if he had been immediately released on bail he would have gone about looking for witnesses to prove that his statements that he was guilty were not true. On his trial, for

the first time, he did assert his innocence and denied his admissions of guilt, but, as the trial court observed, his effort to substantiate his denial was "most feeble."

The conviction of a defendant does not lack due process of law merely because the Commonwealth's officer has failed to perform his legal duty in dealing with him after his arrest. The law supplies him with a civil remedy for that wrong. In so acting, the officer goes beyond the authority given him by the Commonwealth and ceases to be its agent. Cf. *Hall* v. *Commonwealth*, 138 Va. 727, 732, 121 S. E. 154, 155. His wrongful act should not deprive the Commonwealth of its right to enforce its penal laws unless it is made reasonably clear that such wrongful act has in fact invaded the defendant's constitutional rights and deprived him of evidence material to his defense which he would otherwise have obtained. The rights of the public, represented by the Commonwealth, and the rights of the citizen are both to be regarded and, if possible, kept in balance. The constitutional rights of the citizen must be protected, and should be respected by every officer of the Commonwealth. When the officer carelessly or willfully disregards his duty and assumes and exercises authority he does not possess in dealing with a prisoner, he may thereby endanger the right of the Commonwealth to prosecute for the crime which was the occasion for making the arrest. His duties under the law are easily learned and it is highly important, both to the citizen and to the Commonwealth, that they be zealously and properly performed.

In this case we hold that it has not been shown that the officers' acts deprived the defendant of material evidence, and since the evidence adduced was clearly sufficient to support the conviction, the judgment below is

*Affirmed.*