# Richmond

## John James Holt v. City of Richmond.

June 10, 1963.

Record No. 5600.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, l'Anson and Carrico, JJ.

The opinion states the case.

*Ernest H. Dervishian (Dervishian, Hutzler & Lowenstein, on brief), for the plaintiff in error.*

*James B. Wilkinson, Assistant Commonwealth's Attorney (J. E. Drinard, City Attorney; O. C. Thacker, Jr., Assistant City Attorney, on brief), for the defendant in error.*

EGGLESTON, C. J., delivered the opinion of the court.

John James Holt, hereinafter called the defendant, was convicted by a jury on a warrant charging him with operating an automobile while under the influence of intoxicants, in violation of an ordinance of the City of Richmond, he having been convicted of a like offense on November 15, 1960, in Henrico county court. The trial court entered judgment on the verdict and we granted the defendant a writ of error.

On appeal the defendant contends that (1) the verdict is contrary to the law and the evidence, and (2) the conviction lacks the required due process of law in that the conduct of the arresting and detaining officers deprived him of his constitutional right to call for evidence in his favor. Constitution of Virginia, Article I, § 8.

The evidence on behalf of the prosecution, accepted by the jury, shows that on May 10, 1962, at approximately 12:30 A. M., the defendant drove his automobile into the rear of a bus which had stopped for a red traffic light at the intersection of Broad street and the Boulevard in the city of Richmond. He gave no explanation or excuse for the collision. Despite the obviously serious damage to the front of his car, and against the advice of the driver of the bus, the defendant persisted in his unsuccessful attempts to start his car. Asked whether he noticed anything "unusual about the condition of the defendant," the bus driver replied that his eyes appeared to be "weak and bloodshot."

Within a few minutes F. J. Trexler, Jr., a police officer, arrived on the scene. The defendant first told this officer that "some girl was operating his car;" then he stated that "a man was the operator," and finally stated that "he was loaded and did not know who was operating" it. The defendant made the same statements to Sergeant B. W. Hughes who arrived on the scene about thirty minutes after the collision.

Both police officers testified that there was a strong odor of alcohol on the defendant's breath. The defendant consented to a co-ordination test which officer Hughes said he was unable to perform satisfactorily; that with his eyes closed he was unable to bring his finger to the tip of his nose, and that he fumbled when trying to pick up a coin. Thereupon the defendant was placed under arrest by Officer Trexler on the charge of operating a motor vehicle while under the influence of intoxicants. The defendant insisted that he was not intoxicated and was told by the officers of the right, under Code, § 18.1-55, to a chemical analysis to determine the amount of alcohol in his blood. He made no request for such a test.

After taking the defendant to the city lockup Officer Trexler procured and served on him a warrant charging him with the offense of which he was subsequently convicted. Trexler admitted that he did not take the defendant before the justice of the peace from whom he secured the warrant, or before any other judicial officer. He said that "presumably that was done by the lockup personnel," but there is no evidence that this was done. The defendant testified that it was not done.

Since the defendant's own testimony is the main basis for his contention that the conduct of the officers after he was taken to the lockup deprived him of his constitutional right to call for evidence in his favor, it is important to note just what he said with reference to this phase of the case. According to the evidence which is before us in narrative form, he testified "that at the lockup he saw only two persons, both police officers whose names were unknown to him; that he was asked some questions by one and then fingerprinted by the other; that he was never taken before the justice of the peace, whom he found out, subsequent to his ultimate release on bail, was in the same building; that he told the officer he wanted to get out and was permitted to make one telephone call about 2:00 A. M., and that he called his mother to get him out but that she stated she was afraid to come out alone at that time of night; that from his previous arrest in Henrico county he knew he was entitled to bond and thought it would be in the amount of $500; that he was not allowed to make another telephone call, being told that the rule was only one telephone call allowed a prisoner; that without requesting or insisting on making another telephone call he was placed in a cell without protest and slept for about four hours—until 6:00 o'clock A. M., when he again asked if he could get out and he was told by

the police officer that it would be after 9:00 o'clock A. M. before he could get out; that shortly after 9:00 o'clock A. M. he was taken before the justice of the peace and bailed for his appearance in traffic court; that when arrested he had over $100 cash in his pocket and the bail was set at $300 and the bail fee was only $21; that the bondsman's office was next door to the lockup."

As to the defendant's first contention, we find the evidence quite sufficient to sustain the jury's finding that he was driving his car while under the influence of intoxicants, in violation of the city ordinance. To summarize: without any stated explanation or excuse he drove his car into the rear of the standing bus; despite the obvious damage to the front of his car and against the advice of the driver of the bus, he continued to attempt to start his car; he denied that he was driving the car at the time of the accident, made conflicting statements as to who was the operator, and finally admitted that he was "loaded" and did not know who the operator was; there was a strong odor of alcohol on his breath and his eyes appeared to be "weak and bloodshot."

We agree with the defendant that subsequent to his arrest his rights were violated in that he was not, as required by law, brought with reasonable promptness and without unnecessary delay before an officer authorized to issue criminal warrants so that that officer might determine whether a warrant should be issued for his arrest, or whether he should be released, admitted to bail, or committed to jail. Code, §§ 52-20, as amended, 19.1-98, 19.1-110; *Winston* v. *Commonwealth*, 188 Va. 386, 393, 394, 49 S. E. 2d 611, 614, 615; *McHone* v. *Commonwealth*, 190 Va. 435, 441, 57 S. E. 2d 109, 112, 113. He was not brought for this purpose before the justice of the peace who issued the warrant or another such officer who was then on duty in his office in the same building with the lockup.

Despite the fact that the defendant told the officers at the lockup, at 2:00 A. M. and again at 6:00 A. M. on the day of his arrest, that he wanted to "get out," which clearly indicated that he wanted to be released on bail, and although a bondsman's office was next door to the lockup and the defendant had on his person sufficient cash to pay the "bail fee," he was denied access to a justice of the peace for the purpose of procuring bail until after 9:00 A. M. on that day. The officers gave no reason or excuse for their failure to perform the duties imposed on them by law in dealing with the defendant subsequent to his arrest. It is clear, then, that their actions in this

respect were arbitrary and illegal. *Winston* v. *Commonwealth, supra,* 188 Va., at page 395, 49 S. E. 2d, at page 615; *McHone* v. *Commonwealth, supra,* 190 Va., at pages 441, 442, 57 S. E. 2d, at pages 112, 113.

But, as we said in the *Winston* case, the mere fact that an arresting officer fails to perform his duty of bringing an arrested person before a judicial officer, or that an opportunity for applying for bail was improperly denied him, "does not necessarily invalidate his subsequent conviction." 188 Va., at page 396, 49 S. E. 2d, at page 616. See also, *McHone* v. *Commonwealth, supra,* 190 Va., at page 442, 57 S. E. 2d, at page 113; *Durrette* v. *Commonwealth,* 201 Va. 735, 742, 113 S. E. 2d 842, 847.

We held that under the circumstances shown in the *Winston* case, the effect of the failure of the arresting officer and the custodian of the arrested person to perform their duty was to deprive the defendant of his constitutional right to call for evidence in his favor and that accordingly his subsequent conviction lacked the required due process of law which could not be remedied at a new trial. There the defendant, both at the time of his arrest and on the trip to jail, protested to the arresting officer that he was not intoxicated and that he had not taken any intoxicant during the day. He insisted at the time of his arrest, during the trip to jail, and after his arrival there that he be taken to a physician for an examination in order that it might be medically determined that he was not intoxicated. Soon after his arrival at the jail a friend requested that he be allowed to post bond for the defendant. All requests for bail were denied and at the direction of the arresting officer the defendant was held in jail from 4:30 P. M. until 9:00 P. M. before he was taken before a judicial officer and admitted to bail. There was medical testimony that it could have been determined by tests whether the defendant was under the influence of intoxicants but that such tests could not be relied on more than three hours after the alleged drinking. We said that the testimony tended to show that the evidence of the defendant's sobriety, which he desired to produce, was in fact procurable and would have been procured had he been dealt with according to law.

In the *McHone* case we held that while the defendant had been illegally detained there was no showing that such detention had deprived him of his constitutional right to call for evidence in his favor. There, at the time of his arrest and on the way to jail and in jail, the defendant freely admitted his guilt and expressed the desire

to be allowed to pay his fine and go home. He did not ask for bail or indicate that if admitted to bail he would be able to procure evidence to show his innocence. We there pointed out that the officer's wrongful act "should not deprive the Commonwealth of its right to enforce its penal laws unless it is made reasonably clear that such wrongful act has in fact invaded the defendant's constitutional rights and deprived him of evidence material to his defense which he would otherwise have obtained." 190 Va., at page 444, 57 S. E. 2d, at page 114. See also, *Durrette* v. *Commonwealth, supra,* 201 Va., at page 742, 113 S. E. 2d, at page 847.

In a case of this character whether the illegal detention of the defendant has deprived him of evidence material to his defense, or the opportunity of obtaining such evidence, is usually a question of fact depending upon the particular circumstances. In the present case this issue was submitted to the jury in an instruction to which no objection was made and decided adversely to the defendant. The pertinent part of the instruction reads thus: "If the jury believes from the evidence that the defendant was not brought before a magistrate within a reasonable time after his arrest and given the opportunity to obtain bail and that such failure prevented him from having the opportunity of obtaining evidence in his behalf then the jury should acquit the defendant."

Under the evidence before them the verdict of the jury was plainly right. Indeed, they could properly have reached no other conclusion. There is no showing that if the defendant had been promptly admitted to bail he could probably have secured evidence material to his defense or tending to show his innocence. He made no claim to the arresting officer, or to any of those who later detained him, that such evidence was procurable. When told of the charge on which he was arrested and his right to medical evidence to show his lack of intoxication he made no request for the opportunity to secure such evidence. He did not then, or at any time later, ask the privilege of calling a physician. He made no such request in his telephone conversation with his mother. While testifying in his own behalf at the trial he made no claim that had he been released earlier he could have procured evidence favorable to his defense. In short, there is an entire lack of showing that by reason of the illegal conduct of the officers the defendant was deprived of any evidence or the opportunity of obtaining any evidence in his behalf.

Thus we see the circumstances of this defendant's case are quite

unlike those in the *Winston* case, upon which he relies. Similar to the circumstances in the *McHone* case, it does not appear that his illegal detention invaded his constitutional rights and deprived him of any material evidence in his favor. Hence, his conviction does not lack the required due process of law.

We find that the verdict of the jury is amply supported by the evidence and accordingly the judgment is

*Affirmed.*

SPRATLEY, J., dissenting:

It seems to me that the only premise upon which the judgment in this case can be affirmed is that as there was sufficient evidence to justify the finding that defendant was guilty, it matters not how his conviction was obtained. I must, with great deference, dissent from that conclusion on the ground that the illegal detention of the defendant did deprive him of his constitutional rights and hence his conviction did lack due process of law, in that it was in violation of Section 1 of the XIV Amendment to the Constitution of the United States.

Every person has an inherent right not to be restrained of his liberty except by due process of law. The right to bail is an inalienable right guaranteed to every citizen who is charged, but not yet convicted, with the commission of a bailable offense. VIII Amendment, U. S. Constitution; Section 9, Article 1, Constitution of Virginia and Virginia Code, §§ 52-21, as amended, 19.1-98 and 19.1-110. A person charged with a crime has also the right "to call for evidence in his favor." VI Amendment, U. S. Constitution; Section 8, Article I, Constitution of Virginia.

Virginia Code, §§ 19.1-98 and 19.1-110 stipulate the duties of an arresting officer and the justice of the peace before whom a person is brought, charged with an offense.

Code, § 52-21, as amended, provides that an officer making an arrest, such as in this case, "*shall forthwith bring the person so arrested before an officer authorized to issue criminal warrants* in the county or city where the arrest is made. The officer before whom such person is brought shall proceed to examine the officer making the arrest. If the officer before whom such person is brought has reasonable grounds upon which to believe that a criminal offense has been committed, and that the person arrested has committed

such offense, he shall issue such a warrant as might have been issued prior to the arrest of such person under the provisions of § 19.1-91. if such a warrant is issued the case shall thereafter be disposed of in like manner as though the warrant had been issued prior to the arrest. If such a warrant be not issued the person so arrested shall be released." (Emphasis added.)

The stipulated facts in this case were in conflict as to whether defendant was operating his automobile under the influence of intoxicants. In that connection it is but fair to add the following facts. Defendant, at the time of arrest, "immediately insisted" that he was not guilty, and thereafter consistently made that claim. In that he was corroborated by Sergeant Hughes and Police Officer Trexler. Four witnesses were called by the city. Two of these, James A. Danner and Frank L. Jones, who were in a position to observe the defendant's condition, did not think he was under the influence of intoxicants at the time of the accident. Danner said he was selling newspapers on the street corner where the accident occurred; that he heard the noise of the collision of the motor vehicles; and that he observed the defendant but did not detect the odor of alcohol on his breath. Jones, the driver of the bus that was struck by Holt's automobile, said that he saw defendant immediately after the accident; that he sat in the back seat of the patrol car which took him to the police lockup; that he did not smell any alcohol on his breath; and could not say that Holt was under the influence of intoxicants.

Under the full circumstances, I agree, there was sufficient evidence to sustain the jury's verdict that defendant was guilty of operating his car under the influence of intoxicants. However, that is not the controlling issue here. Regardless of defendant's guilt or innocence, he was entitled to be brought to trial by due process of law, and that is the issue which now confronts us.

The Court agrees that the detention of defendant subsequent to his arrest was in violation of his rights, and was "arbitrary and illegal." This admission puts the Court in a position of confession and avoidance. In avoidance, it is sought to show that the illegal detention did not deprive him of any material evidence in his favor. In support, the Court cites *Winston* v. *Commonwealth*, 188 Va. 386, 49 S. E. 2d 611 and *McHone* v. *Commonwealth*, 190 Va. 435, 57 S. E. 2d 109.

A close reading of the opinions in those two cases shows different

states of facts. As I see it, the material facts in the *Winston* case are much like those in the present case. Here, as in that case, the defendant, at all times, insisted that he was not guilty. Here, as in that case, "had the defendant been taken before a proper judicial officer for the purpose of securing a warrant for his arrest, the defendant could have then and there applied to such officer for bail. It would have been the duty of such judicial officer to determine whether the defendant was in a proper condition to be admitted to bail." Here, as in that case, the action of the arresting officers "in denying the defendant this opportunity by confining him in jail * * *, had the effect of substituting their discretion in the matter for that of the judicial officer." 188 Va., *supra*, page 395. Here, as there, it is "perfectly apparent" that, as a result of his illegal detention, the defendant was deprived of the opportunity to exercise his constitutional right to call for evidence, "which might have supported his claim that he was innocent of the charge under which he was held."

Moreover, in the *Winston* case, as here, there was an entire lack of showing that the evidence the defendant might have called, had he been given that opportunity, would have been in his favor. That could have been determined only upon presentation of the evidence. The right of a defendant to call upon a physician for evidence in his favor is no greater than his right to call upon a layman for the same purpose. The material point is that each defendant was denied the exercise of his right to call for the evidence. Hence, the conviction in each case lacked due process of law.

In the *McHone* case, the defendant, at the time of his arrest, on his way to jail, and in the jail, freely admitted his guilt. He asked that he be allowed to pay his fine to the officers and be released. He did not request that he be allowed to give bond, and the only time it was mentioned by him was to the jailer sometime after the arresting officers had gone; but even then he did not deny his guilt. McHone offered no defense. He freely proclaimed his guilt in such a manner as to negative any desire to call for evidence to the contrary. Consequently and logically, he was not denied any right or privilege.

A denial of bail is as effective a violation of rights as is the requirement of excessive bail. A denial of the opportunity to exercise the right to call for evidence is a denial of the right itself.

Neither in the Constitution of the United States, the Constitution of Virginia, or in the statutes of Virginia is there any requirement that

before a person charged with a crime can call for evidence in his favor, he must prove that he can obtain such evidence. Whether a defendant could or could not obtain favorable evidence is beside the question. We do know that Holt was deprived of his right to give bond, of the exercise of the discretion of the bailing officer as to whether he should be detained, of the right to call for evidence, and the right to call for the assistance of friends or counsel. He was to all effects and purposes held incommunicado for about 9 hours.

Instruction No. 5, given by the court, without objection, was erroneous, contrary to the evidence, contrary to the law, and prejudicial to the defendant. It is admitted that he was denied "the opportunity to obtain bail," and it is indisputably true that he did not have "the opportunity to obtain evidence in his behalf." Hence, there was no factual issue before the jury except as to his guilt or innocence of the offense charged against him. As the Court says, there was "no showing that if the defendant had been promptly admitted to bail he could probably have secured evidence material to his defense or tending to show his innocence." The question as to the nature of the evidence was not in issue. In reality, the instruction involved a determination of law, that is, whether the denial of bail and of the right to call for evidence in his favor constituted a lack of due process of law.

The instruction imposed the burden on defendant to show that his illegal detention and the denial of bail "prevented him from having the opportunity of obtaining evidence in his behalf," a purely conjectural and speculative question under the circumstances.

The constitutional and statutory provisions are more than merely procedural requirements. They go to the heart of the provision of Section 1 of the XIV Amendment to the U. S. Constitution providing that no "state shall deprive any person of life, liberty, or property, without due process of law"—a safeguard for the protection of individual rights. However, if the provision be considered procedural, defendant was denied procedural due process, a denial as prejudicial as the denial of the assistance of counsel, of a speedy trial, or of freedom from illegal search and seizure. A defendant may prefer a witness in his favor rather than the assistance of counsel. Cf. *State* v. *Krozel*, 24 Conn. Sup. 266, 190 A. 2d 61, (March 5, 1963), where under facts similar to those here, it was held that defendant was deprived of his constitutional right to assistance of counsel.

The opinion of the Court, as I read it, imposes a serious restriction of constitutional rights guaranteed to the defendant under our Federal and State Constitutions, and represents a disregard of the express mandatory provisions of Virginia Code, § 52-21. I adhere to the view that courts are not invested with the power to enact laws. Their function is to ascertain what the law is, as enacted by the legislature. It is to be regretted that this should occur in Virginia, the fountain-head of constitutional government.

History and experience remind us that if a guilty man be denied his constitutional rights, sooner or later one without guilt may likewise suffer.