# CIRCUIT COURT OF ARLINGTON COUNTY

Commonwealth of Virginia

v.

Arava

June 29, 2001

Case Nos. CR00-1123, CR00-1124

BY JUDGE BENJAMIN N. A. KENDRICK

This matter comes before the Court on Defendant's Motion to Suppress Statements and Evidence. After hearing testimony and oral argument on February 7, 2001, and carefully reviewing Defendant's Memorandum in Support and the Commonwealth's Response, the Motion to Suppress is denied for the reasons set forth below.

*Factual Background*

On July 10, 2000, the defendant called 911 in the City of Alexandria, reporting that he had just shot his wife. The communications dispatcher turned the phone over to Alexandria Detective Bill Scott. The detective identified himself to the defendant, and the defendant proceeded to explain that the gun was in his apartment and that it was still loaded. Prior to the 911 call, the Arlington Police Department had discovered the victim's body inside her vehicle. An eyewitness reported seeing a vehicle matching the description of defendant's gold Toyota Camry leaving the scene.

While Detective Scott was still speaking with the defendant on the 911 call, Alexandria officers responded to the defendant's Alexandria apartment and took custody of the defendant. The defendant cooperated and was

restrained, handcuffed, and searched for weapons without incident. An Alexandria officer entered the apartment with a police dog and made a "protective sweep." The defendant, still handcuffed, was placed in the back of a police cruiser. Alexandria police did not question the defendant. Alexandria Officer Dan Cannaff sat in the cruiser while they waited for the Arlington police and engaged in "small talk" with the defendant. The officer responded to defendant's general questions, which did not relate to the incident.

The Arlington detectives arrived at the defendant's apartment complex after responding to the scene of the crime in Arlington, where they had found the defendant's wife's body in her vehicle. They spoke with Detective Scott, who provided them with the defendant's identifying information. Detectives Nguyen and Coale introduced themselves to the defendant while he sat in the Alexandria police cruiser. Detective Nguyen informed the defendant that they were investigating a shooting and asked for his name and date of birth. Detective Nguyen then asked the defendant if he would consent to a search of his apartment and car for evidence of a shooting. Detective Nguyen explained the contents of the "Permission for Search" form and the defendant's right hand was released from the handcuff so that he could sign the form. Alexandria Officer Cannaff, who remained in the cruiser with the defendant, was instructed that he should radio Detective Nguyen if the defendant decided to withdraw his consent to the search at any time.

Detective Nguyen searched the defendant's apartment and seized the defendant's gun case, as well as an unlocked briefcase that contained ammunition. Detective Nguyen secured the apartment and did not re-enter until he executed a search warrant on July 27, 2000. He then proceeded to the parking lot, where he saw defendant's car with the right rear passenger window blown out. He saw a shell casing laying on the right rear passenger seat. The shell casing was taken into custody by Arlington Detective Claggett, and the vehicle was towed to the police impound lot and secured. The vehicle was not searched further until Detective Nguyen executed a search warrant on July 11, 2000.

The defendant was transported to Arlington almost two hours after he signed the "Permission for Search" form. During the transport, Detective Coale told the defendant that he would be charged with shooting his wife. The defendant was taken to the 8th floor of the police department and handcuffed to the interrogation room table. Detective Nguyen read the defendant the standard *Miranda* form and asked him about his educational background and how long he had been in the United States in order to determine if he was able to understand the words on the form. The defendant stated that he went to

high school and college in Maryland, and the detectives saw no indication that he did not understand what was being said to him. The defendant signed the form and the detectives left the room, allowing him to eat the Wendy's sandwich they had provided.

When the detectives returned after about twenty minutes, they began questioning the defendant, who admitted to shooting his estranged wife eight or nine times after an argument. This questioning continued until defendant indicated that he wanted to consult with counsel.

## Defendant's Arguments in Support of Suppression

### A. Defendant Never Waived Any Constitutional Right or Protection, Including His Fifth and Sixth Amendment Rights to Remain Silent and to Counsel

The defendant's contention that he never waived his Fifth or Sixth Amendment rights is simply not supported by the evidence. After examining the totality of the circumstances, this Court finds that Mr. Araya's constitutional rights were not violated. The defendant, while sitting in the police cruiser, voluntarily gave the Arlington police permission to search his apartment and car. The question of whether a consent to search is voluntary or was the product of duress or coercion is a question of fact to be determined by the totality of the circumstances. *Gray v. Commonwealth*, 233 Va. 313, 327, 356 S.E.2d 157, 164 (1987) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 36 L.Ed.2d 854 (1973)). The mere fact that a defendant is in custody is not enough in itself to demonstrate a coerced consent to search. *Gray*, 233 Va. at 327, 356 S.E.2d at 164 (quoting *United States v. Watson*, 423 U.S. 411, 424, 46 L. Ed. 2d 598, 96 S. Ct. 820 (1976)).

From the totality of the circumstances, this Court finds that the defendant was not coerced into signing the "Permission for Search" form. The evidence does not suggest that the defendant was intimidated or threatened. Detective Nguyen asked the defendant for his consent to search the apartment and car and read the form to the defendant. The fact that the defendant was not advised of his *Miranda* rights while seated in the police cruiser is irrelevant because the defendant was not being interrogated by the police at that time. He voluntarily consented to a search. As the Commonwealth stated in its memorandum, the questions about the defendant's personal identifying information put to him by Arlington police before he consented to the search of his home and car had not the slightest marks of a *Miranda* interrogation. Thus, finding no duress surrounding the consent to search and finding that *Miranda* warnings were not necessary when the defendant was sitting in the

police cruiser, this Court will not suppress evidence obtained under a valid consent to search.

Even if this Court were to find that the defendant's consent to search his apartment and car was not given voluntarily, suppression is not appropriate under the doctrine of inevitable discovery. See *Walls v. Commonwealth*, 2 Va. App. 639, 347 S.E.2d 175 (1986).

This Court further finds that the defendant voluntarily waived his *Miranda* rights when in the police station, before any interrogation began. After inquiring about the defendant's educational background, the Arlington detectives read the defendant the *Miranda* form. The defendant voluntarily signed the form. When the detectives returned after allowing him time to eat, the defendant started talking about his relationship with his wife and about the crime. Questioning continued for about thirty minutes, during which the defendant never requested counsel, nor did he request to speak with any family member, friend, or doctor. It was not until the detective asked the defendant if he would like to have the conversation recorded that the defendant stated that he wanted "some counseling." At this point, the detectives terminated the interview. Taking into account the totality of the circumstances, this Court finds that suppression of the defendant's initial statements given to police before he requested to consult with counsel is not appropriate.

B. *The Arlington County Police Knowingly and Intentionally Deprived Defendant of His Right to be Taken Forthwith to a Magistrate*

The defendant argues that the Arlington detectives violated his right to be taken forthwith before the nearest magistrate. See Va. Code § 19.2-76 and § 19.2-82. This contention is not supported by law. Virginia courts have consistently held that a violation of these statutes is a procedural violation that only rarely requires suppression of evidence.

The defendant was held in a police cruiser while officers searched his apartment and car. This search was authorized by the defendant. He was then taken to the Arlington Police Department offices, where he voluntary signed a *Miranda* form, and was questioned until he requested to consult counsel. While probable cause may have existed to arrest the defendant when he was transported to the Arlington Police Department, he was not taken to the magistrate at that time. Even assuming that the delay in taking defendant to the magistrate was unnecessary, this was a procedural violation that does not amount to a constitutional error. *Alatishe v. Commonwealth*, 12 Va. App. 376, 379, 404 S.E.2d 81, 83 (1991); *Frye v. Commonwealth*, 231 Va. 370, 376,

345 S.E.2d 267, 273 (1986). The officers' wrongful act "should not deprive the Commonwealth of its right to enforce its penal laws unless it is made reasonably clear that such wrongful act has in fact invaded the defendant's constitutional rights and deprived him of evidence material to his defense which he would otherwise have obtained." *Holt v. City of Richmond*, 204 Va. 364, 369, 131 S.E.2d 394, 397 (1963) (quoting *McHone v. Commonwealth*, 190 Va. 435, 444, 57 S.E.2d 109, 114 (1950)).

There is no evidence that the defendant has been deprived of any exculpatory evidence, nor is there any evidence that he made any requests to obtain evidence that were denied or ignored by the arresting officers. Examining all of the facts, the Court finds that the delay in presentment to the magistrate did not deprive the defendant of his constitutional rights, and thus, under clear Virginia precedent, this claim cannot be used to suppress evidence in this case.

Accordingly, the defendant's Motion to Suppress Statements and Evidence is denied.