JOHN B. CAMPBELL V. COMMONWEALTH OF VIRGINIA.

April 20, 1953.

Record No. 4043.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*Wayt B. Timberlake, Jr.,* and *Philip Lee Lotz,* for plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *Thomas M. Miller, Assistant Attorney General,* for defendant in error.

WHITTLE, J., delivered the opinion of the court.

This case is before us upon a writ of error to a judgment of the Circuit Court of Augusta County entered on February 1, 1952, whereby, following the verdict of a jury finding him guilty of murder in the second degree, John Brooks Campbell was sentenced to twelve years confinement in the penitentiary.

The assignments of error relied upon by the accused pose three questions for decision:

1. Did the lower court err in permitting the introduction of, and testimony concerning, the oral and written confessions of the accused?

2. Did the lower court err in holding that there was sufficient evidence to prove the *corpus delicti?*

3. Did the lower court err in permitting the sheriff of Augusta county to remain in the court room after the motion to exclude witnesses had been granted?

In order properly to consider these questions it will be necessary to detail the facts and circumstances surrounding the crime.

The accused, John B. Campbell, a man 44 years of age, had spent his entire life in a remote mountainous section of Augusta county, where he completed the sixth grade in school. He worked for 27 years prior to this happening as a laborer for a cement company. Campbell had been twice married. His first wife, whom he married in 1932, died in 1947, leaving four children: Louvenia, Sylvia Jean, Mamie and Johnny. In 1948 he married Catherine Cash and had two children by this marriage, aged two years and one year, respectively. The home of the accused was approximately 100 yards from the home of his father, Nelson Campbell.

At the time of the alleged crime Nelson Campbell, his wife, Lucinda Campbell (mother of the accused), a blind brother of the accused, and Sylvia Jean, the second daughter of the accused, were occupying the Nelson Campbell house. The accused, his wife, and the other five children were living in their home. The house was small, having three rooms downstairs and one large room or loft upstairs. The accused, his wife, and the youngest child occupied one room on the first floor, while Louvenia (16 years of age) and the two year old child occupied the other downstairs room. The remaining downstairs room was used as a combination kitchen and dining room. Mamie and Johnny occupied the loft.

Louvenia attended high school in Craigsville, being in the second year. Several witnesses testified that they understood Louvenia was pregnant and had given birth to an illegitimate child on or about February 7, 1951. During the afternoon of February 22, 1951, a dog belonging to Nelson Campbell brought the head of a baby to the barn. Nelson Campbell reported this to his wife, who took the baby's head from the dog and immediately sent word to the authorities.

At the time of the discovery of the baby's head John Campbell had not returned from work. Upon his arrival he was informed by his parents of what had taken place. Later that afternoon Deputy Sheriff Sours appeared in response to the message sent by Mrs. Nelson Campbell and took the head of the baby for examination. That same evening Dr. Charles W. Schiffert, county coroner, examined the baby's head in his office and concluded that it was the head of a full-term baby, well developed and normal in every respect; that the child had been born a week or ten days before its death; that it had been dead two or three days, and that the head had been severed from the body by a sharp instrument. Deputy Sheriff Sours, Sheriff Shaver, and Dr. Schiffert came to the Campbell home later that evening and there questioned various members of the family, including the accused, who stated that he knew nothing about the matter.

The following day, February 23rd, the officers searched the Campbell property for the body of the baby, and on Saturday, February 24th, Deputy Sheriff Sours came by and took Louvenia and Sylvia Jean to Staunton. Soon after their departure John Campbell and his father, Nelson Campbell, went to Staunton and

proceeded to the office of the Commonwealth's attorney, where the girls had been taken for questioning.

About 5:00 p.m. on February 24th Sergeant Gaunce of the Virginia State police and Sheriff Shaver arrested the accused and placed him in jail. No warrant was issued at the time but he was told that he was being held as a material witness on suspicion of murder. While in jail the accused was twice questioned by Sergeant Gaunce and Sheriff Shaver. On each occasion Deputy Sheriff Sours was present. When questioned Campbell maintained his innocence and denied any complicity in the matter. He contended that he was unaware of the pregnancy of Louvenia and did not know that she had given birth to the baby in their home.

On March 1st, the accused was taken to his home by State Trooper Collier, where he found Sergeant Gaunce, Sheriff Shaver, Deputy Sheriff Sours, Deputy Sheriff Kent and the Commonwealth's attorney assembled. Catherine Campbell, wife of the accused, who had been taken into custody, was also present. Sergeant Gaunce and Trooper Collier took the accused into the woods near his home in search of the child's body. The accused says that at that time he was threatened by the officers and told it would be better for him to admit he had participated in the crime. This statement was denied by both Collier and Gaunce.

The accused was brought back to the house and was told by Sergeant Gaunce that his wife had described how the baby had been killed. Whereupon the accused admitted his part in the crime and re-enacted the part played by him, as later set out in the written confession.

On the way back to jail from the scene the parties stopped at a service station where the sheriff provided soft drinks. Here the accused spontaneously confirmed the confession previously made and said that "he had told the truth about it, and that he felt a lot better, that he thought he would be able to get some sleep * * * that he felt like a different man."

On March 1st a formal warrant charging the accused with murder was duly served upon him. On March 2nd the accused made a written confession in question and answer form, signing each of the five pages thereof. The caption of the confession reads:

"Staunton, Virginia, Augusta County Sheriff's Office, March

2, 1951. I, John Brooks Campbell, age 43, of R. F. D. 1, Goshen, Virginia, hereby make the following voluntary statements of my own free will and without threats or promises knowing that what I say might be used against me at any future date.''

The material part of the confession follows: Campbell stated that he was employed at the time of the crime by the Lehigh Portland Cement Company and had been so employed for 26 years; that Louvenia, his oldest child, 16 years of age, became pregnant and gave birth to an illegitimate baby girl on the night of February 6, 1951, at their home; that no doctor was present; that his wife, Catherine, attended Louvenia; that he saw the baby the following morning (February 7); that about 5:00 o'clock on the evening of February 14th he and his wife, Catherine, killed the baby; that at the time of the murder Louvenia was at the home of her grandparents, milking, that he had never told Louvenia of their intention to kill the baby; that the baby was killed at the woodpile by cutting its head off with an axe; that he carried the baby from the house to the woodpile, it being dressed in a white gown and diapers, and was in a paper poke, with its head sticking out; that he held the baby across the chopping block, face up, while his wife, with one stroke of the axe, chopped its head off; that after killing the baby he went back to the house and his wife took the body and buried it; that when Louvenia returned from milking she asked where the baby was and he told her not to worry, that it was gone, that they had killed it; that they did not tell her how the baby had been killed; that when he told Louvenia she cried and lay down on her bed; that Louvenia told the other children that the baby had been killed; that he did not know where his wife buried the baby; that he killed the baby because he could not support it; that no one was implicated in the crime other than his wife and himself; that when Deputy Sheriff Sours came for the baby's head they decided to tell that the baby had been born dead and that Louvenia had disposed of it without their knowledge; that he did not think his wife knew where the baby's body was; that he thought the dogs had eaten all except the head.

The confession concludes: ''I have read the five pages of questions and my answers given Sheriff Shaver, Deputy Sheriff Sours, and Sgt. Gaunce, and everything that I have said is the truth, * * *. I willingly sign my name to each page.'' The con-

fession is signed by the accused and witnessed by Sheriff Shaver, Deputy Sheriff Sours, and Sergeant Gaunce.

The first assignment of error challenges the action of the trial court in permitting the introduction of the oral confessions of the accused and the detailed written confession. It is contended that the confessions should have been excluded because the arrest of the accused was illegal and because "the accused was held in custody, amounting to solitary confinement" until he confessed, all of which tended to show that the confessions were brought about by coercion and compulsion which rendered them invalid and inadmissible in evidence entirely aside from the question as to whether actual physical mistreatment was received by the accused and whether promises and inducements were made to him.

The burden is upon the Commonwealth to prove that extra-judicial confessions are voluntarily made before they can be admitted in evidence against one charged with or suspected of the commission of a crime.

The determination of the admissibility of a confession belongs to the court and not to the jury. *Early* v. *Commonwealth*, 86 Va. 921, 11 S. E. 795; *Upshur* v. *Commonwealth*, 170 Va. 649, 197 S. E. 435. It devolves upon the trial court in the first instance before admitting a confession to determine from the evidence whether it has been freely and voluntarily made (*Upshur* v. *Commonwealth, supra; Macon* v. *Commonwealth*, 187 Va. 363, 372, 373, 46 S. E. 2d 396), or whether it was extorted by threat or fear. *Johnson* v. *Commonwealth*, 184 Va. 466, 35 S. E. 2d 770. In such cases the trial judge has a wide discretion and this discretion will not be disturbed on review unless it has been abused. *Omohundro* v. *Commonwealth*, 138 Va. 854, 121 S. E. 908. The ruling of the trial judge is to be given the same weight by the appellate court as is accorded the finding of fact by a jury. *Omohundro* v. *Commonwealth, supra;* 7 M. J., Evidence, §229, page 608.

The record shows that the able and experienced trial judge carefully and with great deliberation considered all the facts and circumstances surrounding the confessions of the accused. When a final motion was made in the judge's chambers to exclude the confessions Judge Crosby remarked: "Gentlemen, this case is now in its fifth day, and the chief attack of the defense was on the confession. The court spent practically the

first full day on that and about an hour the next morning, and finally concluded it was voluntarily given, which means, of course that evidence can be introduced about it, * * *''.

■ The Commonwealth clearly proved that the confessions were voluntarily given, and that the accused in every instance when he was questioned was fully informed as to his constitutional rights, that he was free to speak or keep silent as he chose.

The main attack upon the admission of the confessions is addressed to the fact that the two oral confessions were made when the accused was being illegally held, before any warrant charging him with an offense had been served upon him. We do not approve or condone such practice. There is no showing in this instance, however, that the defendant's detention, under the related circumstances, in any way affected or rendered the confession involuntary.

The accused relies upon the case of *Winston* v. *Commonwealth,* 188 Va. 386, 49 S. E. 2d 611, where we held that the arresting officer had violated the mandate of the statute (§ 52-21, Code, 1950) in not producing one accused of driving while under the influence of intoxicants ''forthwith'' before a judicial officer so that the question of his sobriety might be then determined. We there said: ''* * * where * * * the effect of the failure of the arresting officer and of the custodian of the arrested person to perform their respective duties is such as to deprive a person of the constitutional right to call for evidence in his favor, his subsequent conviction lacks the required due process of law and cannot stand.'' The reasoning in that case, where the sobriety of the accused was in issue, is not applicable here. In the case under consideration it is not claimed that the holding of the accused without a warrant in any way denied him the benefit of evidence in his behalf such as was denied the accused in the *Winston case.* See *McHone* v. *Commonwealth,* 190 Va. 435, 442, 57 S. E. 2d 109, 113.

The accused also cites several United States Supreme Court cases which deal with the unlawful detention of defendants. *Gambino* v. *United States,* 275 U. S. 310, 48 S. Ct. 137, 72 L. ed. 293, 52 A. L. R. 1381; *Byars* v. *United States,* 273 U. S. 28, 33, 34, 47 S. Ct. 248, 71 L. ed. 520; *McNabb* v. *United States,* 318 U. S. 332, 63 S. Ct. 608, 87 L. ed. 819.

In an annotation in 96 Lawyers' Edition, at page 57, it is

said: "While a confession may be inadmissible in federal courts merely because its admission would violate federal rules of evidence, a confession may be declared inadmissible in a state criminal trial by the Supreme Court of the United States only when the circumstances under which it is received violate those fundamental principles of liberty and justice which are protected by the Fourteenth Amendment against infraction by any state." Citing *Gallegos* v. *Nebraska* (1951), 342 U. S. 55, 96 L. ed. 86, 72 S. Ct. 141.

Rule 5(a), Federal Rules of Criminal Procedure, 18 USCA, is construed in both the *McNabb case* and *Upshaw* v. *United States,* 335 U. S. 410, 69 S. Ct. 170, 93 L. ed. 100, to be a rule of evidence, binding only on Federal courts. In *Brown* v. *Allen* (1953), 344 U. S. 443, 73 S. Ct. 397, 97 L. ed. (Advance p. 375), Mr. Justice Reed, speaking for the court, said:

"Petitioner's contention that he had a constitutional right to have his statements excluded from the record rests upon these admitted facts. He is an illiterate. He was held after arrest for five days before being charged with the crime for which he was convicted. He was not given a preliminary hearing until 18 days after his arrest. No counsel was provided for him in the period of his detention. The alleged confessions were taken prior to the preliminary hearing and appointment of counsel. There is no record of physical coercion or of that less painful duress generated by prolonged questioning. There is evidence that petitioner was told he could remain silent and that any statement he might make could be used against him. He chose to speak, and he made that choice without the promise of reward or immunity having been extended. He was never denied the right to counsel of his choice and was never without competent counsel from the inception of judicial proceedings. If the delay in the arraignment of petitioner was greater than that which might be tolerated in a federal criminal proceeding, due process was not violated. Under the leadership of this court a rule has been adopted for federal courts, that denies admission to confessions obtained before prompt arraignment notwithstanding their voluntary character. *McNabb* v. *United States,* 318 U. S. 332; *Upshaw* v. *United States,* 335 U. S. 410. *Cf. Allen* v. *United States,* No. 11, 132 App. D. C., decided July 18, 1952. This experiment has been made in an attempt to abolish the opportunities for coercion which prolonged detention without

a hearing is said to enhance. But the federal rule does not arise from constitutional sources. The court has repeatedly refused to convert this rule of evidence for federal courts into a constitutional limitation on the states. *Gallegos* v. *Nebraska,* 342 U. S. 55, 63-65. Mere detention and police examination in private of one in official state custody do not render involuntary the statements or confessions made by the person so detained. Petitioner's constitutional rights were not infringed by the refusal of the trial court to exclude his confessions as evidence.''

Wigmore on Evidence, 3rd Ed., section 823, announces the general rule to be that a voluntary confession is not to be excluded because of any illegality in the method of obtaining it, or in the speaker's situation at the time of making it. He says:

''And according to the weight of authority, a confession, if otherwise admissible, cannot be rejected for the reason that the officer to whom it was made held the prisoner in custody on invalid process, or without any process or legal right.''

The signed confession of the accused, dated March 2, 1951, was given at a time when he was legally detained, and this written confession, as well as the oral confessions, were clearly proven to have been voluntarily made by the accused after his constitutional rights had been fully explained to him. The confessions were properly admitted.

The second question raised by the accused relates to whether or not the court erred in holding the evidence to be sufficient to establish the *corpus delicti.* This as well as other essential elements of a crime must be established by the Commonwealth beyond a reasonable doubt. It may be proven by direct evidence or by circumstantial evidence. *Cochran* v. *Commonwealth,* 122 Va. 801, 817, 94 S. E. 329. It cannot be established by an extrajudicial confession uncorroborated by other evidence. *Wheeler* v. *Commonwealth,* 192 Va. 665, 669, 670, 66 S. E. 2d 605; *Cleek* v. *Commonwealth,* 165 Va. 697, 698, 181 S. E. 359, 360. Yet it takes only slight evidence to establish the *corpus delicti* when the commission of the crime has been fully confessed by the accused. 23 C. J. S., Criminal Law, § 916, pages 181, 185; 26 Am. Jur., Homicide, § 383, page 425.

As said by Mr. Justice Eggleston in the *Wheeler case:*

''* * * a confession is competent evidence tending to prove the *corpus delicti,* and all that is required of the Commonwealth in such cases is that there be such substantial corroborative

circumstances as will, when taken in connection with the confession, establish the *corpus delicti* beyond reasonable doubt. *Cochran* v. *Commonwealth,* 122 Va. 801, 817, 94 S. E. 329; *Cleek* v. *Commonwealth, supra,* (165 Va., at page 699, 181 S. E., at page 360) ; *State* v. *Blackwell,* 102 W. Va. 421, 135 S. E. 393, 394.''

When we consider the evidence of the coroner, together with the other facts and circumstances related, including the confessions of the accused, the proof of the *corpus delicti* is inescapably clear in this instance.

■ Finally, the accused challenges the action of the trial court in permitting the sheriff to remain in the court room after his motion to exclude witnesses had been granted. When the sheriff was called as a witness the accused objected to his testimony on the ground that he had not been excluded as had the other witnesses. In overruling the objection the court remarked, ''the law requires the sheriff to remain in the court room''. An exception was taken to the ruling of the court and a motion for a mistrial was made, ''for this incorrect statement of the law'', on the ground that the court's statement implanted in the minds of the jury the impression that great weight should be given the sheriff's testimony.

Section 19-219 of the Code of 1950 provides that in the trial of all criminal cases ''the court may, in its discretion, exclude from the trial any and all persons whose presence is not deemed necessary.'' While it is true that there is no law which requires the sheriff to remain in the court room, the statute leaves the question of the separation and exclusion of witnesses to the sound discretion of the trial court. This same discretion was vested in the court at common law and its ruling thereon will not be disturbed by this court unless the record discloses an abuse of the discretion. *Burford* v. *Commonwealth,* 179 Va. 752, 20 S. E. 2d 509; *Hampton* v. *Commonwealth,* 190 Va. 531, 58 S. E. 2d 288.

In this instance the Commonwealth's case was complete without the evidence of the sheriff. His evidence in no way differed from the evidence of his deputies and the State police, all of whom were excluded from the court room. It is not seriously argued that the failure to exclude the sheriff or the court's remarks about his remaining in the court room in any way prejudiced the accused. The record nowhere discloses that

the court's ruling was prejudicial. There is no merit in this assignment.

The record before us shows that this case was tried by able counsel on both sides. The learned trial judge, in his rulings and instructions, accorded the accused every right to which he was entitled.

We see no prejudicial error in the case, and the judgment is accordingly affirmed.

*Affirmed.*