SYLVESTER JUNIOR HORNE

V.

COMMONWEALTH OF VIRGINIA

Record No. 841331

January 17, 1986

Present: All the Justices

Charles R. Haugh (James E. Treakle, Jr.; Haugh & Treakle, P.C., on brief), for appellant.

John H. McLees, Jr., Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal presents a Fourth Amendment seizure question of first impression in the Commonwealth. The issue is whether Sylvester Junior Horne was constitutionally in custody at the time he made certain statements to the police which led ultimately to his conviction for rape and capital murder during the commission of, or subsequent to, rape. Horne was sentenced to a separate term of life imprisonment for each offense. He made a motion to suppress, a motion to strike, and a motion to set aside the verdict. All motions were denied. Horne contends that denial of the motions was error. We disagree. In our opinion, Horne's Fourth Amendment rights were not violated; therefore, the several motions were properly denied, and we will affirm the trial court's judgments.

The facts concerning Horne's arrest and detention are as follows: The body of Pearl Mae Alexander was found, partially clothed, in a park in Charlottesville about 8:00 a.m. on January 1, 1984. Detective Sergeant D. L. Pleasants of the Charlottesville Police Department was assigned to investigate the murder. Sgt. Pleasants developed a list of suspects; Horne's name was on that list.

Police suspicion had focused upon Horne for at least four reasons: (1) the victim's daughter advised the investigators that Horne had, on a prior occasion, raped the victim but the victim had not told the police; (2) Horne knew the victim; (3) Horne had previously been to the victim's house and had left his bicycle there; and (4) in the past, Horne had been charged with raping another woman.

After Horne became a suspect, Sgt. Pleasants learned of two outstanding misdemeanor warrants against him. At the 11:30 p.m. police roll call on January 1, 1984, Pleasants advised the officers that he wanted Horne picked up for questioning regarding the Alexander murder. Pleasants further advised the officers of the existence of the two warrants.

Officer Townsend, one of the patrolmen who was present at the 11:30 p.m. roll call, learned of Horne's whereabouts. Townsend called for backup and went to an apartment where he believed Horne was staying. When Horne came to the door, Townsend informed him that the police "had a misdemeanor warrant on file for him" and that Townsend "was taking him into custody at that time." The backup officer handcuffed Horne. Officer Townsend patted him down, then placed him in the police van. The arrest occurred about 6:45 a.m. on January 2, 1984.

On the way back to the police station, Officer Townsend notified the dispatcher that he had arrested Horne and asked the dispatcher to notify the detectives that Townsend had "the suspect in custody." Townsend arrived at the station about the same time as Sgt. Pleasants. Townsend transported Horne to the lockup, signed him in, and placed him in a cell to be turned over to the detective. Before placing Horne in the cell, Townsend took his belt and the contents of his pockets including a comb, a small case containing a firecracker, and a watch. A property form showed that the items were taken from Horne about 7:45 a.m.

Horne was locked in a cell from 7:43 a.m. until 8:13 a.m. when Sgt. Pleasants served him with the two misdemeanor warrants.

Shortly thereafter, Pleasants took Horne to an interrogation room, advised him that he was a suspect in the Alexander murder, advised him of his *Miranda* rights, and secured his signature on a rights waiver form. Horne then gave an alibi, which proved false, and signed a consent form which allowed the police to search his room in his mother's house for the clothes he had been wearing on January 1st.

The search of Horne's room at his mother's house revealed clothes that appeared to be stained with blood, semen, and feces. When Horne was confronted with this evidence he became emotional, and cried, then he confessed.

In this appeal, Horne advances two main arguments, both based on the Fourth Amendment. First, Horne contends the arrest was a sham and that all evidence flowing from the arrest must be excluded. Second, Horne contends that even if the arrest was valid, his detention became unlawful because he was not taken promptly before a magistrate; Horne goes on to say that once the arrest became unlawful there was no probable cause to detain him. We reject both arguments.

Horne contends his arrest was a sham because, in his view, the police were not looking for him for service of the two warrants. According to Horne, the warrants were used as a pretext to seize him for questioning regarding the Alexander murder. Horne says that normal misdemeanor warrant procedure was not followed after he was arrested and as a result, he argues, it is plain that he "was sought, arrested and detained for questioning in connection with the murder-rape investigation." During oral argument, Horne's counsel refined the argument on this point by stating that though the warrants were valid, the motives of the police must be analyzed to determine whether the arrest was proper or whether it was a sham.

In support of his first argument Horne cites *Hart v. Commonwealth*, 221 Va. 283, 269 S.E.2d 806 (1980), describing it as a case in which this Court excluded evidence seized from an accused after a pretext arrest. Horne's reliance on *Hart* is misplaced. *Hart* is distinguishable. There, the arresting officer conceded that he arrested Hart for being drunk in public "because he was interested in obtaining" glass fragments from Hart's trousers and shoes to compare with broken glass at the scene of a burglary. *Id.* at 285, 269 S.E.2d at 807. No such concession was made here. Indeed, in this appeal, the arresting officer insisted that he ar-

rested Horne because of the warrant. The following exchange illustrates the point:

Q. So, I take it from your testimony that you put Sylvester [Horne] in the lock-up instead of taking any other course of action because you were told to pick him up and hold him for the detectives or the investigators so they could question him?

A. Well, I was told that, get it correct now, I was told that we had a warrant for him . . . .

Q. . . . I understand that . . .

A. . . . And that we could pick him up for the service of that warrant . . .

Q. . . . Right . . .

A. . . . Which, I think, gives you the probable cause to have him in custody in the first place.

Officer Townsend said that he had intended to serve the warrants on Horne shortly after he placed him in the lockup but that he did not serve them because Sgt. Pleasants said he would take care of it.

Further, in *Hart* the trial court found as a fact that the officer arrested Hart because he suspected Hart might be involved in the burglary. There, the trial court sustained defendant's motion to suppress because the court concluded that the arrest was "simply a pretext arrest." *Id.* at 286, 269 S.E.2d at 808. Here, the opposite result occurred; the court found that the arrest was lawful and that it was not a sham or pretext.

In *Hart*, the trial court excluded all evidence except defendant's oral confession. On appeal, the only issue before this Court was whether the oral confession should have been excluded along with the other evidence. We said that given the trial court's rulings, the oral confession should also have been excluded. We did not decide whether a pretext arrest had been made. On that point we simply said, "Correct or not, this determination nevertheless constituted the basis upon which the case thereafter was tried to a conclusion." *Id.* at 290, 269 S.E.2d at 810-11.

■ Another difference between *Hart* and this appeal was pointed out by the trial court. In *Hart*, the arresting officer treated the arrest of Hart as a matter within his discretion. Indeed, when he first talked to Hart as Hart was walking from the scene of the

crime the officer concluded that, had he wanted to, he could have arrested him for being drunk in public but he chose not to. Here, the arresting officer was operating under warrants that commanded him to seize the defendant. Here the officer had no choice. *Hart* does not support Horne's position.

■ Horne contends further that the arrest was a sham because it was not made in good faith. In this regard, even though the officers were arresting on the basis of warrants, he would have us analyze the motive of the police. We think such an approach would be unworkable. It would require a judge in every squad car. In every case of an arrest pursuant to a warrant, the court would have to look over the shoulder of the police and ask, "Why is he really arresting this person?" We reject this subjective approach in a case such as this where the officers were executing warrants.

■ Moreover, these misdemeanor warrants were not obtained as part of the investigation into the Alexander murder. They were secured on December 23, 1983, as a result of an incident near the University of Virginia. They were placed on file with the Charlottesville Police Department on December 27, 1983. Between December 28 and 30, four attempts were made to serve the warrants, but Horne could not be found. The murder occurred January 1, 1984. Horne was arrested on the warrants on January 2. These were bona fide warrants upon which the area police made bona fide efforts to arrest Horne. Had there been no murder investigation, Horne would still have been arrested if he could have been found. The arrest was not a sham.

■ This is not to say that the police did not want to question Horne about the murder. However, as the Commonwealth points out, if the arrest is bona fide, the police can make preplanned coordinated use of the arrest to give them the opportunity to ask questions about matters for which probable cause to arrest does not exist. *See Abel* v. *United States*, 362 U.S. 217 (1960); *Boeckenhaupt* v. *United States*, 392 F.2d 24 (4th Cir. 1968); *Simmons* v. *Commonwealth*, 225 Va. 111, 300 S.E.2d 918 (1983); *State v. Tucker*, 286 Or. 485, 595 P.2d 1364 (1979).

■ From a Fourth Amendment standpoint, the initial question is whether Horne's seizure was reasonable. Under long-standing precedent, an arrest is reasonable if supported by probable cause. *See Gerstein* v. *Pugh*, 420 U.S. 103 (1975); *Carroll* v. *United States*, 267 U.S. 132 (1925). The existence of the two warrants means that there was probable cause to arrest Horne.

Horne next contends that even if he was legally arrested, he was illegally detained because probable cause to detain him for the Alexander murder did not develop until after the time he should have been taken before a magistrate with regard to the misdemeanor offenses for which he was arrested. Put another way, Horne contends that because he was not taken promptly before a magistrate his lawful arrest became an unconstitutional detention and all the evidence developed during that detention must be excluded.*

In advancing this argument, Horne does not cite a single case in which a lawful arrest turned into an unconstitutional detention. Instead, he relies on language contained in *Sands & Co.* v. *Norvell*, 126 Va. 384, 101 S.E. 569 (1919), which mentioned unlawful detention. But *Norvell* was a civil suit for false imprisonment. It has nothing whatever to do with the question of a lawful arrest becoming an unconstitutional detention which requires the exclusion of evidence derived from that detention.

The trial court concluded that Horne's detention violated Code § 19.2-76 and Rule 3A:5(a)(3) because Horne was not taken before a magistrate without unnecessary delay. However, Horne confuses these violations of Virginia law with violations of the Fourth Amendment.

In the federal system, such a violation would result in the exclusion of the evidence derived during the period of unlawful detention. But that is not a rule of constitutional origin, it is a rule based on the Supreme Court's administrative power over the federal courts. *McNabb* v. *United States*, 318 U.S. 332 (1943).

In Virginia, we have declined to follow such a rule. *Campbell* v. *Commonwealth*, 194 Va. 825, 75 S.E.2d 468 (1953). In the Commonwealth, not every violation of the requirement that a suspect be taken before a magistrate without unnecessary delay results in

---

*In arguing that the evidence against him should have been excluded, Horne relies largely upon *Florida* v. *Royer*, 460 U.S. 491 (1983); *Taylor* v. *Alabama*, 457 U.S. 687 (1982); *Dunaway* v. *New York*, 442 U.S. 200 (1979); and *Brown* v. *Illinois*, 422 U.S. 590 (1975). His reliance on those cases is entirely misplaced. They concern arrests made without probable cause.

Horne also refers to *Simmons* v. *Commonwealth*, 225 Va. 111, 300 S.E.2d 918 (1983), indirectly suggesting that *Simmons* supports his contention that whether or not his arrest was lawful it evolved into an unconstitutional detention. However, the central issue in *Simmons* was whether the defendant had been lawfully taken into custody in the first instance. We held he had been and thus that his in-custody confession did not offend the Fourth Amendment.

the exclusion of evidence. Only in a situation where the delay in taking a suspect before a magistrate resulted in the loss of exculpatory evidence have we concluded that the defendant's due process rights were violated and reversed his conviction. *Winston v. Commonwealth*, 188 Va. 386, 49 S.E.2d 611 (1948). In all other cases, though we have acknowledged violation of the statute, we found no deprivation of the defendant's constitutional rights. *Holt v. City of Richmond*, 204 Va. 364, 131 S.E.2d 394 (1963), *cert. denied*, 376 U.S. 917 (1964); *Campbell v. Commonwealth*, 194 Va. 825, 75 S.E.2d 468 (1953); *McHone v. Commonwealth*, 190 Va. 435, 57 S.E.2d 109 (1950).

In *Winston*, delay in going before a magistrate resulted in the loss of evidence which the defendant could have used to defend himself against the crime for which he was arrested. Here, there was no claim of lost evidence of any kind. Nor does Horne otherwise explain how he was prejudiced by the delay in taking him before a magistrate. He merely suggests that because he was not taken before a magistrate the probable cause to hold him for the crimes stated in the warrants somehow evaporated. When the proposition is thus stated, its inherent weakness becomes apparent.

■ Horne was legally seized and constitutionally detained even though rights provided to him by Virginia law were violated during that detention. Even so, he had no right to walk out of the jail because of the delay in going before a magistrate. As long as he was constitutionally in custody and confessed voluntarily from a Fifth Amendment standpoint — which he did — then anything he said was subject to being used against him.

This case is similar to *Ralph v. Pepersack*, 335 F.2d 128 (4th Cir. 1964), *cert. denied*, 380 U.S. 925 (1965). That case was before the federal court on habeas corpus brought by a Maryland prisoner who claimed that his lawful arrest became an unconstitutional detention because of delays in taking him before a magistrate. The Fourth Circuit rejected that argument.

Ralph was arrested between 2:30 and 3:00 a.m. in Washington, D. C., because he fit the description of a man for whom the Maryland authorities were searching in connection with two sex-related crimes and because his car matched that described in connection with one of the crimes. When arrested he was in an area where screams had been reported to the police shortly before the arrest. While Ralph was in custody being questioned about his activities that night in the District, the police learned that a wo-

man had been raped and sodomized near the place where Ralph was arrested. Ralph confessed to the D. C. rape about 9:40 a.m., within 6 hours 40 minutes after his arrest. He was then questioned about the Maryland crimes. He confessed to one of those crimes at 11:00 a.m. At 11:38 a.m., he was taken before a magistrate in connection with the D. C. crime.

Later, he was tried and convicted of the Maryland rape. His confession was admitted into evidence. He was sentenced to death.

Ralph contended, on habeas review, that his arrest was without probable cause and was merely for investigatory purposes. In addition, he claimed that his confession was inadmissible because it was obtained after unnecessary delay in taking him before a magistrate on the D. C. charges. The Fourth Circuit rejected both arguments.

The court first concluded that the arrest was valid, because it was based on probable cause to believe that Ralph committed the Maryland crimes. With regard to whether the arrest was for purposes of investigation the court said this: "We think untenable the proposition that an arrest based on probable cause becomes unconstitutional because described by an officer as an arrest for 'investigation.'" *Id.* at 134.

On the question of the effect of the delay in taking Ralph before a magistrate, the court said the rule relied on by Ralph did not proscribe all delay but only unnecessary delay. The court said there was evidence to support the trial court's finding that the delay in question was necessary. Also, the court noted that interrogation "may result as well in release of the innocent as detention of the guilty." *Id.* at 137. The Fourth Circuit noted that while lengthy interrogation and resort to the "third degree" will not be tolerated, "reasonable inquiry should not be prohibited." *Id.* at 138.

We find no error in the judgments appealed from. Therefore, we will affirm the judgments of the trial court.

*Affirmed.*