# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Harold Bradford Folley

July 20, 1990

Case No. 90-110

By JUDGE JAY T. SWETT

Defendant filed a motion to suppress on the basis that his detention and arrest was in violation of his Fourth Amendment rights and in violation of Virginia Code Section 19.2-83. The ensuing testimony was presented at the suppression hearing.

The incident occurred on the afternoon of January 27, 1990. Harold Folley and his friend, John Allen, walked from Allen's residence toward the downtown mall. Along the way, the two young men were spotted by Charlottesville Police Officer Mitchell. Folley had on a black coat and Allen wore a blue coat. Mitchell mistakenly thought that Allen, wearing the blue coat, was one Andre Williams. Mitchell knew of an outstanding warrant reportedly pending against Williams. Officer Mitchell radioed for other policemen to be on the lookout for the two young men. Charlottesville Police Officers Field and Davis responded to Mitchell's request.

Field testified that Mitchell did not identify which of the two needed to be apprehended, nor did Field know of an outstanding warrant against Andre Williams.

Shortly after the radio call from Mitchell, Fields saw Folley and Allen in a clothing store on the downtown mall. He was the first officer to speak to the two men and initially was alone.

According to the evidence, Field asked for the two men to come outside of the store. Both responded by obliging Field's request to come outside where all three waited for Mitchell to arrive. Mitchell arrived several minutes later and asked both for identification which neither possessed. Folley and Allen were outside the store when Mitchell arrived.

While the questioning proceeded, Officer Davis arrived and stood to the side. While Mitchell was talking to the two, Davis was motioned inside the clothing store by a clerk. The clerk told Davis that the man in the black jacket (i.e., Folley) had dropped a Tylenol bottle on the floor when he was asked by Field to come outside. Davis discovered what he believed to be cocaine in the Tylenol bottle. He went outside and placed Folley under arrest.

Defendant argues that his stop and subsequent arrest was in violation of his Fourth Amendment rights. The applicable standard to authorize a stop is that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Leeth v. Commonwealth*, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). When applied to these facts, defendant argues that Fields did not have a particularized and objective basis for suspecting Folley of criminal activity when he asked Folley and Allen to stop outside of the store. The police were looking for Andre Williams, who was reportedly involved in a prior shooting. Mitchell mistakenly thought that John Allen was Williams. Therefore, defendant argues that these facts provide no particularized and objective basis for suspecting Harold Folley of criminal activity.

Defendant's argument assumes that every police-citizen encounter is a seizure of the person within the meaning of the Fourth Amendment. However, that is not the case. An exchange between a police officer and a citizen to establish identity is not a seizure under the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 13, 88 S. Ct. 1868, 20

L. Ed. 2d 889 (1968). "[A]n interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." *I.N.S. v. Delgado*, 446 U.S. 210, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984).

This type of citizen-police encounter is normally referred to as a "consensual encounter." This is what occurred in this case. This was not a *Terry* type stop because the purpose of the stop by Officer Field was for identification purposes only and thus not governed by the protection guaranteed in the Fourth Amendment. *Florida v. Rodriguez*, 469 U.S. 1, 105 S. Ct. 308, 83 L. Ed. 2d 165 (1984). "So long as a person remains at liberty to disregard a police officer's request for information, no constitutional interest is implicated." *U.S. v. Gray*, 883 F.2d 320 (4th Cir. 1989), quoting *U.S. v. Black*, 675 F.2d 129, 134 (7th Cir. 1982). Thus, as the Court of Appeals found in *Richards v. Commonwealth*, 8 Va. App. 612 (1989), the defendant was not detained, resulting in Fourth Amendment protection not being available.

Absent a Fourth Amendment seizure, the exclusionary rule does not apply. *DePriest v. Commonwealth*, 4 Va. App. 577, 359 S.E.2d 540 (1987). Therefore, the Tylenol bottle, or any evidence related to the Tylenol bottle, will not be excluded from being admitted at trial.

The defendant also argues that the encounter between Fields and Folley violated Virginia Code § 19.2-83, Virginia's "stop and frisk" statute. The Supreme Court of Virginia has previously addressed the issue of whether the exclusionary rule applies when there exists only a violation of a state statute. It has determined that unless there is some constitutional violation (of either the United States or Virginia), a violation of a state statute will not result in a suppression of evidence. *Campbell v. Commonwealth*, 194 Va. 825 (1953); *Tharp v. Commonwealth*, 221 Va. 487 (1980); *Horne v. Commonwealth*, 230 Va. 512 (1986). Both *Tharp* and *Horne* held that if the police conduct did not rise to the level of a Fourth Amendment violation, then the exclusionary rule did not apply. *Tharp* at 491; *Horne* at 518-19. Thus, defendant's argument that the encounter between Field, Mitchell and Folley was in violation of § 19.2-83 and that the evidence should be suppressed is erroneous.

Furthermore, even if it were decided that this was a *Terry* stop, the Tylenol bottle would still be admissible. "An officer has the right to make an 'investigatory stop' of a person if he has 'articulable reasons,' or 'founded suspicion,' or 'a particularized and objective basis for suspecting the particular person stopped of criminal activity'." *Wright v. Commonwealth*, 222 Va. 188, 192, 278 S.E.2d 849 (1981) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). Officer Field did not know why Officer Mitchell wanted these two men detained. Field only knew that Mitchell had asked for the two men to be detained. Mitchell believed that one had an outstanding arrest warrant. Therefore, both Field and Mitchell possessed the requisite reasonable suspicion based on specific objective facts that criminal activity might be or might have occurred.

Consequently, the stop by Field was permissible and any evidence up to the point that Officer Mitchell arrived and it was realized that they had the wrong person detained is admissible. Once Officer Mitchell arrived and conferred with Field and the two men, the inquiry was whether one of the two was Andre Williams. Once Officer Field knew the reason for the questioning and that neither of the two men was Williams, then, but for the arrest by Officer Davis, Folley and Allen were free to go. However, the Tylenol bottle was dropped *before* Mitchell had arrived on the scene. Consequently, this evidence is not subject to any restrictions as a result of what might have occurred *after* the bottle was dropped.

Finally, even if this was a *Terry* stop and there was insufficient objective facts and thus an illegal detainment, it is still likely that the evidence would be admissible. There is no nexus between the alleged illegal stop and the evidence gained because of what the store clerk witnessed. "While it is true that a criminal defendant's voluntary abandonment of evidence can remove the taint of an illegal stop or arrest, it is equally true that for this to occur, the abandonment must be truly voluntary and not merely the product of police misconduct." *United States v. Beck*, 602 F.2d 726 (5th Cir. 1979). If one assumes the seizure of Folley in this case was illegal, nevertheless the abandonment of the Tylenol bottle was witnessed by the store clerk. This evidence was not a

product of the illegal seizure. The Tylenol bottle would be considered as voluntarily abandoned by the defendant before there was any occurrence of police misconduct.

The evidence here is that this was a "consensual encounter" and the Fourth Amendment did not apply. Alternatively, if the stop was a *Terry* stop, there existed sufficient objective facts to permit the stop. Therefore, the motion of the defendant to suppress the evidence of the Tylenol bottle and its contents is denied.