480

## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Commonwealth of Virginia

v.

Jay W. Conaway

Case No. 90-CRC-215

By JUDGE WILLIAM H. LEDBETTER, JR.

August 27, 1990

This opinion addresses the dispositive issue associated with the defendant's motion to suppress heard on July 31, 1990: the validity of the police stop of the defendant's vehicle.

In the late evening of March 28, 1990, Officer S. E. Clegg was on patrol in the Lafayette Boulevard section of the County when he received a radio message to be on the lookout for a blue Ford Mustang with Virginia license # OMB-287. The dispatcher related that the manager of McDonald's Restaurant at Four Mile Fork had reported that the occupants of such a vehicle had just left his establishment after driving recklessly in the parking lot, urinating in a public area, and otherwise acting rowdy on the premises.

Moments later, Officer Clegg saw the vehicle described in the radio dispatch going north on Lafayette Boulevard. He gave pursuit with his emergency lights and siren. At the suppression hearing, Officer Clegg testified that the vehicle reached speeds of 20 miles per hour above the posted speed limit and did not stop for more than half a mile after he began pursuit.

Officer Clegg found the operator of the Mustang to be the defendant Conaway. He testified that when he approached the driver's side of the automobile, he smelled

a "very strong" distinctive odor of marijuana emanating from the inside of the vehicle. Although Conaway was cooperative, other occupants were less so and gave evasive answers to some of Officer Clegg's questions.

Officer Clegg then went to the passenger side of the car and asked one of the occupants in the back seat, the one who had given evasive answer about his identity, to get out. To accomplish this, the passenger in the front seat had to get out. Again, Officer Clegg smelled marijuana. He conducted a brief search for weapons and found contraband. Conaway made incriminating statements regarding the ownership of the substance.

By radio, Officer Clegg ascertained that the license plates on Conaway's Mustang were not registered to that vehicle.

Other officers arrived and assisted Officer Clegg. Conaway was taken into custody. The officers inventoried the vehicle prior to having it moved from the shoulder of the street. During the inventory, several bags containing a total of about twenty ounces of marijuana were found in the rear window area of the car. Conaway was charged with possession of more than one half ounce but less than five pounds of marijuana with intend to distribute.

At the conclusion of the suppression hearing, the court held that if the initial stop was lawful, the subsequent police conduct was proper and did not violate Conaway's constitutional rights, but, on the other hand, if the initial stop was not proper, it followed that the officer's actions thereafter were not proper and fruits of the seizure would be suppressed. Counsel were asked to submit memoranda on the issue of the legality of the stop. The memoranda have been filed.

The propriety of this vehicular stop does not depend on the existence of probable cause. Probable cause is prerequisite to an arrest and to a search, as those terms are well-defined in the cases. Normally, a warrant is required except in exigent circumstances. However, in *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that a police officer may make a brief investigative stop and may frisk the suspect for weapons in order to protect himself during the inquiry, if he has an objectively reasonable suspicion supported by articulable facts that the suspect has committed a crime or that criminal activity

may be afoot. An investigative detention under *Terry v. Ohio* does not require proof of wrongdoing or even probable cause. By analogy, investigative stops of motor vehicles are authorized in *Adams v. Williams*, 407 U.S. 143 (1972), and its progeny.

Here, Officer Clegg first sighted the Conaway vehicle moments after receiving the radio message regarding alleged criminal activity at McDonald's. He had the make and model of the vehicle and its license plate number. He gave pursuit immediately, not for the purpose of arresting the occupants, but for the purpose of inquiring about their identities and recent activities in furtherance of his investigation of the McDonald's incident which he reasonably believed may have involved the persons in that vehicle. (Under Virginia law, Officer Clegg could not have made a warrantless arrest in these circumstances because the incident at McDonald's involved, at most, misdemeanors not committed in his presence. Virginia Code § 19.2-81.)

In 1970, in the wake of *Terry*, the General Assembly enacted a "stop and frisk" law. The language of that law is more stringent than the requirement stated in *Terry*. *Simmons v. Commonwealth*, 217 Va. 552 (1977); *Lansdown v. Commonwealth*, 226 Va. 204 (1983). The statute provides:

> Any police officer may detain a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit *a felony* or *possesses a concealed weapon* in violation of § 18.2-308 . . . . Virginia Code Section 19.2-83. (Emphasis added.)

There is no suggestion in the evidence that Officer Clegg stopped the car because he suspected Conaway or any occupant of the car of possessing a weapon. As noted above, his stated purpose in pursuing and stopping the car was to investigate the McDonald's incident. Also, as noted above, that incident involved, at most, misdemeanors.

Therefore, under these facts, Officer Clegg not only lacked authority to arrest Conaway for the McDonald's incident (§ 19.2-81), he also lacked authority to stop and detain him to investigate the incident (§ 19.2-83).

The Commonwealth contends that Officer Clegg personally observed activity which, combined with the radio dispatch, provided him with an objectively reasonable suspicion. It is true that an officer's personal observations which verify and corroborate other information that he has received, even an anonymous trip, may, in combination, elevate an officer's supposition to an articulable suspicion sufficient to justify an investigative stop under *Terry. See Alabama v. White*, 110 S. Ct. 2412 (1990); *Iglesias v. Commonwealth*, 7 Va. App. 93 (1988). In this case, what did Officer Clegg observe that verified or corroborated the information he had received over his radio? The Commonwealth points to the vehicle's excessive speed. Excessive speed of a vehicle on Lafayette Boulevard does nothing to confirm suspicions about reckless driving, rowdy behavior, or urinating in public at a restaurant at Four Mile Fork. In any event, § 19.2-83 proscribes investigative stops for misdemeanors (except violations of the concealed weapon statute) not committed in the officer's presence, whether verified or not.

In the alternative, the Commonwealth contends that Officer Clegg had probable cause to stop the vehicle and to arrest Conaway because of the excessive speed of the vehicle, a traffic offense committed in his presence.

The testimony, as the court understands it, establishes that Officer Clegg spotted the Conaway vehicle only moments after he received the radio message about the McDonald's incident; that because the vehicle matched the description in the message, Officer Clegg immediately pursued it with his emergency lights and siren engaged; and that the Conaway vehicle did not immediately stop but reached speeds well in excess of the posted speed limit before it pulled over. Viewed in light of these facts, the essence of the Commonwealth's argument seems to be that a traffic violation committed while the officer is already in the process of making an impermissible stop justifies the stop. The court rejects the argument.

In *Harris v. Commonwealth*, 9 Va. App. 355 (1990), a police officer stopped a vehicle because a brake light was not working. The officer had previously been informed by other officers that the driver of the vehicle was a fugitive who would be driving that particular car on that particular street on that date and would be carrying nar-

cotics and possibly weapons. A panel of the Court of Appeals upheld the stop, concluding that the officer was justified in stopping the vehicle based on his observation of a traffic violation "even if his subjective intent was to stop the vehicle to investigate for illegal possession of drugs." (The panel also upheld the stop under *Adams v. Williams, supra,* because the information he had received was reliable and the officer's personal observations corroborated the precise date, place, and vehicle, giving him reason to stop the vehicle for further investigation. The information received and corroborated by the officer in *Harris* involved a *felony,* and therefore, the strictures of § 19.2-83 were not implicated.) That case is readily distinguishable from the case at bar. In *Harris,* the officer put the car under observation and followed it until he noticed the missing brake light, giving him a basis for stopping the car. Here, as explained above, the officer was *already in the process of effecting the stop* when the traffic violation was committed.

Accordingly, the court is of the opinion that the stop was improper, for the reasons explained above. It follows that the seizure and Conaway's statements must be suppressed. The motion to suppress is granted.

Because it is apparent that the Commonwealth cannot proceed without such evidence, the indictment will be dismissed.

### October 5, 1990

The defendant was indicted at the July Term for possession of marijuana with intent to distribute. He filed a motion to suppress, and the motion was heard on July 31, 1990. Thereafter, counsel submitted memoranda, and the court issued an opinion on August 27, 1990, granting the motion.

On September 7, 1990, before the court's ruling could be incorporated in an order, the Commonwealth filed a motion for reconsideration, supported by a memorandum. The court requested that defense counsel respond. The defendant's memorandum was submitted on October 2, 1990.

The Commonwealth invites the court to reconsider its analysis of the testimony presented at the suppression hearing. This invitation is directed toward the court's

finding that the officer's stop of the defendant's vehicle could not be justified on the ground that he observed a traffic violation and stopped it for that purpose, as in *Alabama v. White*, 110 S. Ct. 2412 (1990). The court declines the invitation. The court's analysis of the facts, explained in the letter opinion of August 27, 1990, will not be reconsidered.

To summarize, the court's evaluation of the facts are as follows:

First, Officer Clegg did not stop the defendant's vehicle to make an arrest or to search the vehicle. Therefore, the probable cause standard that is a prerequisite to an arrest and to a search does not apply to the initial stop.

Second, Officer Clegg had sufficient articulable facts to support an objectively reasonable suspicion that crimes had been committed by one or more occupants of the vehicle. Therefore, the stop was investigative and passes constitutional muster under *Terry v. Ohio*, 392 U.S. 1 (1968), and *Adams v. Williams*, 407 U.S. 143 (1972).

Third, the actions of Officer Clegg subsequent to the stop were proper and based on probable cause. Therefore, if the initial stop was lawful, the actions that followed did not violate the defendant's constitutional rights.

Fourth, Officer Clegg lacked statutory authority to stop and detain the defendant to investigate misdemeanors not committed in his presence. Virginia Code § 19.2-83. On account of this fourth finding of fact, the court ruled that the evidence seized from the vehicle, and the defendant's incriminating statements, must be suppressed.

As noted above, the court will not re-analyze the facts. However, the Commonwealth also asks the court to reconsider its legal conclusion; i.e., that the evidence should be suppressed. For the reasons given below, the court is of the opinion that such a request, under the unusual circumstances of this case, is appropriate.

The issue for reconsideration, then, is narrow: did the court err in suppressing the evidence on the ground that the officer violated § 19.2-83?

In *Thompson v. Commonwealth*, 10 Va. App. 117 (1990), the Court of Appeals said that a confession obtained during the period of a statutorily invalid arrest is not subject to exclusion. Defense counsel correctly observes that

the *Thompson* court's ruling was not the primary holding of the case. Nevertheless, the court's comment that evidence constitutionally seized is not to be suppressed "even though rights provided . . . by Virginia law were violated . . ." is pertinent here.

More to the point is *Horne v. Commonwealth*, 230 Va. 512 (1986). There, the Supreme Court of Virginia held that violations of state procedural statutes do not result in exclusion of evidence unless rights of constitutional dimension have been impinged upon.

At first blush, *Horne* appears distinguishable because that case did not involve Virginia's "stop and frisk" statute (§ 19.2-83). However, a proper reading of the appellate court pronouncements on the subject compels the conclusion that the judiciary of the Commonwealth has expressly refused to engraft an exclusionary rule onto any of the procedural statutes in Chapter 7 of Title 19.2. See also *Frye v. Commonwealth*, 231 Va. 370 (1986), and *Tharp v. Commonwealth*, 221 Va. 487 (1980).

Therefore, upon reconsideration, this court is bound to withdraw its earlier opinion wherein the court ruled that evidence constitutionally seized nonetheless should be suppressed where the initial stop was not authorized under § 19.2-83. The court erred; the evidence may not be suppressed.

Accordingly, the letter opinion of August 27, 1990, is withdrawn, and the defendant's motion to suppress will be denied.